## WINFIELD S. CAHILL

### *vs.*

## THE MAYOR AND CITY COUNCIL OF BALTIMORE, A MUNICIPAL CORPORATION, AND THE COMMISSIONERS FOR OPENING STREETS IN THE CITY OF BALTIMORE.

*Court of Appeals: former decisions; effect of—; all points in record as presented supposed to be covered.  Streets: Commissioners for Opening; awards.  Appeal: burden of proof.  Jury: papers and calculations for same; discretion of the court.*

The Court of Appeals is presumed in every case to have considered all questions properly presented by the record, and raised on the appeal, which are found necessary for the determination of the rights of the parties to the suit.          p. 20

When an appeal is taken, all the questions which may be properly raised in the Court of Appeals on the then state of the record, as it exists in the court of original jurisdiction, must be considered as embraced by the first appeal, and if not then raised and presented they must be considered as waived.     p. 20

Under section 175C of Chapter 125 of the Acts of 1914, the rule for the burden of proof on appeal from the awards of the Commissioners for Opening Streets, carries no arbitrary discrimination between appeals by the city and those by the property owners, and does not render the Act unconstitutional.  p. 22

In the assessment for benefits for the opening of streets, leasehold property which has been leased from the city should be assessed as only on the leasehold interests.          pp. 23-24

In the absence of consent of counsel, or of statutory enactment, it is in the discretion of the court what papers may be given to the jury.                                   pp. 26-27

*Decided June 22nd, 1916.*

Appeal from the Baltimore City Court. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, STOCKBRIDGE and CONSTABLE, JJ.

*Clifton S. Brown,* for the appellant.

*George Arnold Frick, Assistant City Solicitor for Baltimore City,* (with whom was *S. S. Field, City Solicitor,* on the brief), for the appellees.

CONSTABLE, J., delivered the opinion of the Court.

This is the second appeal in this case to this Court, and the first appeal is reported in 126 Md. 596, in which the present appellees were the appellants.

The case originated by Winfield S. Cahill filing a petition in which he prayed an appeal from the award of damages and assessment of benefits made by the Commissioners for Opening of Streets of Baltimore, in the matter of the condemnation and opening of the second section of the street known as the Key Highway.

In the first trial below the property owner and petitioner made a motion to quash the proceedings of the Commissioners for Opening Streets, in so far as the proceedings related to the assessment of benefits against his property, and alleged as the reason therefor that the General Assembly of 1914 by Chapter 470 had passed an Act which prohibited the Mayor and City Council of Baltimore from collecting or levying any assessments for benefits in connection with the

condemnation, opening and widening of the second section of the Key Highway. The lower Court sustained this motion, and in accordance with this ruling and the instructions granted the jury assessed damages only, and thereupon the first appeal was taken.

The action of the lower Court in sustaining the motion to quash was reversed by this Court, on the ground that Chapter 470 of the Acts of 1914 was unconstitutional.

On the retrial of the case the petitioner again sought to quash the proceedings in so far as they related to the assessment of benefits to his whole property, and also filed a motion to quash the proceedings so far as they related to the assessment of benefits to one piece of property which he held under a lease from the city. The grounds relied upon in support of the first motion were that the Commissioners for Opening Streets had omitted to assess benefits against property on the first section of the Key Highway, and because they had omitted to assess benefits to property owned by the City of Baltimore abutting on the second section of the Key Highway.

Both of these motions were overruled. Numerous exceptions were taken to the rulings of the Court on the testimony and instructions asked, and this appeal is taken therefrom.

One of the main questions is whether or not the lower Court was correct in overruling the motions to quash.

We have had occasion, very recently, to consider, a point very similar to the one here in issue. The case of *Park Land Corporation of Baltimore et al.* v. *The Mayor and City Council of Baltimore* was heard and decided on its second appeal to this Court at the April Term of this year; 128 Md. 611. In the second appeal the order of the parties was reversed. At the retrial of the case, after the reversal on appeal, but before judgment was entered, the defendants, for the first time raised the question of jurisdiction, and thereby sought to set aside the proceedings. CHIEF JUDGE BOYD in delivering the opinion of the Court reviewed the authorities, both of this State and other jurisdictions, and announced that the

20     CAHILL vs. M. & C. C. OF BALTO.

Opinion of the Court.     [129

overwhelming weight of authority was, in even so serious a question as jurisdiction, to the effect that the point had been lost by not having been raised before the mandate of this Court went forth, and said, if the defendants had reason to believe we had overlooked that question, they should seasonably have brought it to our attention by a motion for reargument or other proper way, and not have waited until the second trial was about to be concluded before seeking to raise it. "In *Carrington* v. *Basshor,* 119 Md. 378, we said on page 381: 'In *Smith* v. *Shaffer,* 50 Md. 132, it was said a party can not be allowed to prosecute different and successive appeals on the same state of record, unless there had been new proceedings since the last appeal, and then only in respect to questions raised on and by such new proceedings. When an appeal is taken, all the questions which may be properly raised in this Court on the then state of the record as it may exist in the Court of original jurisdiction must be considered as embraced by the first appeal, and if not then raised and presented for decision they must be considered as waived, otherwise there would be no end of litigation and appeals. *Graff* v. *Barnum,* 33 Md. 283; *Stonebreaker* v. *Stonebreaker,* 34 Md. 444; *Waters* v. *Waters,* 28 Md. 11; *Abraham* v. *Trust Co.,* 86 Md. 254. While the question of interest was raised on the former appeal, it was not discussed in the opinion and no mention thereof appears in the decree. It does not, however, necessarily follow it was not considered by the Court in the conclusion and ultimate determination of the case. *This Court is presumed in every case to have considered all questions properly presented by the record, and raised on the appeal, which are* found necessary for the determination of the rights of the parties to the suit.' "

In *State* v. *Brown & A. & E. R. R. Co.,* 64 Md. 199, speaking of the effect of a decree upon a subsequent case between the same parties and over the same subject matter, it is said: "The plea of *res judicata* applies, except in special cases, not only to the points upon which the Court was required by the parties to form an opinion and pronounce a

judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence might have brought forward at the time."

But it is a fact that this appellant was not by a lack of diligence not in possession of the facts which he now makes the basis of his motion. By reference to the briefs filed by him in the first appeal, not only on the first argument, but on the re-argument, for there was a re-argument, he made numerous references to those facts. For instance on page 6 of his first brief: "For this improvement, as argued below and not disputed by the appellants, benefits were first assessed on the abutting and the other property to the extent of $22,732; *but later all benefits were ordered to be abated* by the proper municipal authorities, and this was done. Section 1 of the Highway was accordingly completed without the payment of benefits." And later, beginning on page 44 of the same brief he argued: "Because the municipal authorities not having collected benefits from section 1 of the Key Highway, the Legislature had the constitutional right to step in and prohibit the assessment of special benefits for the construction of section 2 of the same Highway."

So it is apparent, that not only did he have knowledge of the facts, but he actually argued from them, as a basis, for sustaining the first motion to quash, and thereby brought them under the consideration of this Court for whatever bearing they might have had upon the rights of the parties.

That the great weight of authority is that prior decisions are conclusive on subsequent appeals is shown in the valuable note appended to the case of *Hastings* v. *Foxworthy,* 34 L. R. A. 321, where all phases presented by the question are treated together with a long line of citations. Under subhead n. as to questions which might have been made on prior appeal says: "As to questions which should have been presented on the prior appeal, or which should have been made on the prior appeal of the case before it was presented on the prior appeal, the decision then made is conclusive. But in Missouri and Indiana there is some conflict of the cases, and

in the latter State the rule is now that the law of the case is limited to the point expressly decided." Without here citing the numerous authorities cited there, we simply make reference to the note so that upon examination they can be found so as to bear out the text.

Without further extending this opinion on this point we deem it sufficient to say that, under our own authorities and the great weight of authority in other jurisdictions, the lower Court was correct in concluding that the prior mandate operated against opening again the question of quashing the proceedings so far as they related to assessing benefits against the property of the appellant.

The appellant contends that error was committed by the Court in refusing to grant his third and seventh prayers and in granting the appellees' first, third and fourth prayers. The refusal of the appellant's third prayer and the granting of the appellees' first prayer will be treated together, for they involve the same question of law, namely, upon which party rested the burden of proof. The appellees claiming that the burden of proof should be upon the party asserting that the award or assessment ought to be less or more than the amount so fixed by the Commissioners for Opening Streets, and that the return of the Commissioners for Opening Streets is *prima facie* evidence of the correctness of the amount of damages awarded and benefits assessed.

Prior to the enactment of Chapter 125 of the Acts of 1914, the rule for the burden of proof, in this character of proceedings had been that on appeal the burden of proving damages was on the property owner, but on the City proving benefits. By section 176A of said Act the old method of awarding damages and assessing benefits was changed, so that instead of the Commissioners or, if an appeal, the Court or jury, making separate awards for damages and benefits, the Commissioners, Court or jury were directed to make but one award, and that to be the amount found to be the difference between the amount found by them for damages and benefits; in other words, the net damages or net benefits. Since by

the new procedure there was no way of ascertaining, when
damages and benefits were both involved, what were the
separate amounts of damages and benefits from which the
Commissioners arrived at the net damages or benefits, it was
necessary to change the rule as to the burden of proof. This
was provided for in section 175C, whereby upon an appeal
the return of the Commissioners was made *prima facie* evi-
dence of its correctness, and placed the burden of proof upon
the party asserting the incorrectness of the award. Special
provision was made that, in appeals from benefits, where no
question of damages was involved, the burden should be,
where it always had been, on the City. Since, by section
176A, it would be impossible where damages and benefits
were both involved, to ascertain, as we have said, the separate
amounts found as damages and benefits, it is clear that the
old rule would not apply; so in our opinion the section pro-
vided the only fair and just rule; that is by putting the bur-
den on the one asserting the error. But where only benefits
were involved, there was no reason to change the rule and
the burden was left on the City. This disposes of the only
contention made against the Act; that is, the objection that
it creates an arbitrary discrimination.

There was, however, one lot, No. 752, of the appellant's,
about which there was no question of damages involved, and,
under the provisions of the Act, the burden of proving the
benefits would have been on the City. The prayer of the
City made no exception as to that lot, and, of course, that
was error. We will point out in that part of the opinion im-
mediately following an error in an instruction as to the meas-
ure of damages relating to this lot, which will make it neces-
sary to remand the proceedings, so far as this lot is con-
cerned, and on a new trial the correct instruction as to the
burden of proof can be submitted.

The appellant held Lot No. 752 by virtue of a lease dated
the 19th day of July, 1897, from the Mayor and City Coun-
cil of Baltimore, for a term of twenty years, with the right
of renewal thereof for another term of twenty years. It was

covenanted by the lessee that the rent reserved would be paid in equal quarterly installments "in each year during this demise, over and above all deductions for taxes and assessments of every kind, assessed or levied, or hereafter to be assessed or levied thereon and on the rent hereby reserved." The appellant sought an instruction to the effect that no benefits should be assessed against his interest in said lot. This prayer was refused. The Court granted an instruction for the City that if the jury found that the lot was directly benefitted by the opening of the Key Highway, "then the amount of such benefit is to be assessed against the lot notwithstanding the fact that the reversionary interest under the lease, which has been offered in evidence, is vested in the Mayor and City Council of Baltimore."

Both of these contentions are incorrect, and this is easily demonstrable from a reading of the case of *P., W. & B. R. R. Co.* v. *Appeal Tax Court,* 50 Md. 397. One of the main questions in that case was, whether the City of Baltimore had the right to tax two lots of ground leased by it to the appellant for ninety-nine years renewable forever. CHIEF JUDGE ALVEY, in discussing that feature of the case, said: "The appellant does not contend, as we understand the counsel that the parcels of ground leased from the city are entirely exempt from assessment and taxation; but it is contended, that inasmuch as the appellant is owner and holder of a leasehold estate only, subject to a full annual rental, payable to the city, the owner of the reversion in fee, and that the city is entirely exempt from all taxation in respect of the reversion and the rent reserved by the lease, the appellant should only be assessed with the value of the leasehold estate, subject to the rent reserved. And this would seem to be nothing more than what is just and equitable.

"All the interest and estate of the city in the premises are clearly exempt from taxation by statute; and if the reversion, and the rent, the supposed annual value of the leasehold estate, are free from taxation, upon what principle should the lessee be assessed as for a fee simple estate, without de-

duction of rent? In answering this question, it is said that the appellant has covenanted with the city to 'pay all taxes, assessments and public dues whatever, levied, charged or assessed, or that may hereafter be levied, charged or assessed, on the above described premises, or the yearly rent issuing therefrom.' This is the covenant in the leases from the city, but it is very manifest that it is but the usual covenant inserted in leases for the benefit and exoneration of the lessor; and that it has reference only to such taxes and assessments as might affect the reversion and its incident the rent reserved under the lease. It does not seem reasonable that it could ever have been the design of the parties that this covenant should have operation notwithstanding the interest of the City in the property and all rent accruing therefrom should have entire exemption from assessment and taxation."

It is clear then, upon settled authority, that the prayer of the appellees should have limited the benefits, that would accrue, to the leasehold interest only of the appellant.

We do not think the City's fourth prayer is open to the only objection raised against it by the appellant, that is that the jury might have been misled by it, for it contains the oft-repeated definition of what constitutes market value in cases of this character.

During the argument before the jury, the counsel for the appellant requested the jury to take, at his dictation, the amounts testified to by the witnesses for the appellant as to damages and benefits, said notes to be used by the jurors after retiring to make up their verdict. Upon objection by the appellees, the Court refused to allow this to be done, and this forms one of the exceptions. The record shows that some of the jurors had made memoranda during the course of the examination of the witnesses. Counsel for the appellees, in making his objection, stated that no objection was made to those memoranda, but confined the objection to the jurors writing from the statement of counsel.

Although it is not provided by statute in this State what papers the jury shall take with them into the jury room,

when about to consider their verdict, the practice has been that they take the pleadings and instructions, but no other papers whatever, except by consent of counsel. *Poe's Practice,* sec. 328; *Evans' Practice,* p. 401. Unquestionably it has been the practice for jurors to make rough notes, particularly where figures are involved, during the course of the examination of the witnesses, and take these notes with them when they retire to their room. Upon occasion also jurors have taken notes, at the request of counsel, during the argument, and taken these notes to their room. This has been done with the consent, or at least acquiescence of opposing counsel, and this Court has never directly been called on to pass upon the practice.

The question then is, not whether the jurors could have taken the papers so made to their jury room, but whether the appellant was entitled, as a matter of right, that they should. The rule stated above has been modified, in some States by statute, and in others by judicial decisions, and now by the great weight of authority, in the absence of a statute, whenever it is desired that papers shall be given to the jury, without the consent first had of the other side, the question is one left exclusively to the discretion of the trial Court. It is said in 38 *Cyc.* 1832: "Whether or not permission shall be given to the jury to take out books, papers or documents, and the determination as to what papers shall be taken out by the jury, is very generally held to be a matter resting in the sound discretion of the Court, which is not reviewable except where there has been an abuse of such discretion." This Court in *Hitchins* v. *Frostburg,* 68 Md. 100, held that notwithstanding the practice had been to send the pleadings out with the jury, the refusal of the lower Court to permit the declaration to be taken by the jury was not the subject of exception or review, for the reason that it was a matter resting exclusively in the discretion of the trial Court.

We see no objection in a juror taking notes in a case complicated with figures, during the examination of testimony,

and being permitted to take these to the jury room, for the purpose of refreshing his recollection, provided the trial Court is satisfied that such action will not delay the trial, or interfere with the juror following the evidence. But making such notes from the dictation of counsel is an entirely different matter, and about which the Court should be extremely cautious in permitting it to be done, in the absence of consent of counsel.

We have found only one State where in the absence of statute such practice is allowed as a matter of right. In all the other States where the question has arisen, it has been held, as we have stated, not a right, but a discretionary power of the trial Court, with the exception of Indiana, where it is held to be a reversible error to permit it. We think, however, from reason that the better rule is with the weight of authority and so hold.

The exceptions to testimony are so numerous that we do not deem it necessary to discuss them in detail. We have examined each with care, and while possibly there may have been some errors in the rulings, we are satisfied that they were not of such a serious character to call for a reversal.

Having found no errors in the rulings other than as to the burden of proof and the measure of damages as to lot No. 752, we will affirm the rulings in the proceedings for all other lots, and reverse the rulings in the proceedings for lot No. 752, and remand the proceedings for that lot for a new trial.

> *Rulings reversed as to the proceedings as to lot No. 752 and remanded for new trial as to that lot, and rulings affirmed as to all other lots, one-fourth of the costs to be paid by the appellees and the balance by the appellant.*