HULBERT ET, APPROPRIATION OF EASEMENTS, IN RE.

Common Pleas Court, Ashtabula County.

No. 48543.   Decided August 22, 1961.

Mr. *E. Terry Warren* and *Mr. Perry Graham,* for appellants. *Mr. Alan M. Wolk,* assistant attorney general, and *Donna Cherrill,* for appellees.

PONTIUS, J.   This matter is before the Court for disposal upon Appellee's motion for a new trial, and in this opinion the points made in oral argument will be treated in the order thus presented.

In argument, point was first made that the Court erred in refusing to strike the testimony of witnesses Whitehouse and Kadon, appraisers for Appellants, for two reasons: 1st, that

the witness was not inquired of, first, as to his opinion on total value of the whole property, land and buildings, before the take, then as to the value of the take and then as to the value of the residue both before and after the take; 2nd, that the breakdown of figures on the various valuations testified to did not mathematically "add up" correctly.

The witness Graham, who preceded Mr. Whitehouse to the stand, as well as Mr. Whitehouse and Mr. Kadon, were each inquired of by Appellants' counsel, without objection, with respect to having an opinion on market value of the allotment lands separately and the industrial lands separately. In other words, Appellants' approach to the valuation problem was on the theory that the highest and best use of part of the land was for allotment purposes and that of the remaining portion was for industrial use; and. Appellants offered evidence in support of this theory without first offering evidence on value of the whole. All of this was done without objection, and it is the opinion of this Court that the question as to whether or not a witness may be confined on direct examination solely to "total valuations" as distinguished from giving testimony on the value of the component parts of the total lands involved, is not presented. The first reason advanced as ground to strike this testimony is, therefore, not well taken. The second reason certainly points only to the weight of this testimony and not to its competency.

Argument was next advanced that all the testimony with respect to land values, damages to residue, etc., were made incompetent because the Court charged the Jury as a matter of law that the date of take was the date of filing the resolution, namely, December 15, 1960; whereas, some of the testimony with respect to property values was predicated upon inspections and appraisals made some three or four months thereafter. It should be borne in mind that the Appellants approached this case with the theory that the date of take was as early as February, 1958, when survey crews first entered upon Appellants' land, whereas the date of entry by the contractor was definitely shown to be March 22, 1961. The witness Graham testified that his date of appraisal was May—1960. Witness Whitehouse testified that his first inspection of the

298

property was in February of 1958, and that there would be no difference in his opinion in the values between that date and the date of trial; and witness Kadon testified that his appraisal of the property was made in June of 1960. On behalf of the Appellee witness Wearsch testified his appraisal was made in March of 1961, and witness Majka that his appraisal was made in April of 1961. Since we are not dealing with stocks, bonds, treasury certificates, or grain futures, whose prices we know do fluctuate rapidly on the exchanges, but, rather, with real estate, the price of which is, of course, subject to change but not to sudden rise and fall as in "the market," and since various experts have given opinion testimony with respect to land values over quite a varying span of time, and taking judicial notice of the fact that there has been no speculative spree, such as the Florida land booms, so far as property in this County is concerned, the Court is of the opinion that the request to ignore all testimony of this nature is without merit.

It is next argued that the Court erred in its general charge because it did not include the words "fully informed" with respect to a buyer and seller when defining the term "fair market value." The Court is of the opinion that its definition to the Jury of fair market value was accurate, but if it can be claimed that the term "fully informed" necessarily must be included in order to properly define "fair market value," suffice it to say that no request therefor was made, and if this be error it is one of omission only, and not of commission.

It is next urged that the Court erred in charging the Jury that it could consider as an element of damages the sum of $2,768.00, as testified to by the witness Walker as being the fair and reasonable cost of an access road necessitated by the taking, which, of course, would be part of the "cost of cure." At the time this testimony was offered it was limited by the Court to being a part of the damage to residue and was not permitted as a separate item of damage. In the general charge the Jury was instructed that the measure of damages to the residue was again governed by market value, namely, the difference before and after the take, and the Court did instruct the Jury, in effect, that in arriving at such damages to residue it could consider among other things likewise mentioned in the charge, the ques-

tion of the fair and reasonable cost of this access road. It does not seem to the Court that the use of this language can fairly be considered to mean that such cost can be added to the damages to the residue as a separate and distinct item, and I do not believe that the Jury did so, in spite of the fact that its total award ended with the two figures "68." If counsel felt that the charge of the Court in this respect did not sufficiently cover the point, it was counsel's duty to so advise the Court and request additional instruction on the subject. The case of *American Pipe Line* v. *Kennark*, 103 Ohio App., 133, Syllabus 3, is authority for the proposition that such an item as the cost of an access road is an element of damage in ascertaining total damages to residue.

A point strongly urged on the motion for a new trial is that the Court erred in permitting the Jurors to take notes during the progress of the trial. In this case three expert witnesses testified for the Appellants and two for the Appellee, with respect to land values and damages. In addition to this there was testimony by yet another witness concerning value of buildings taken.

Request was made by the Appellants that the Jury be permitted to take notes, which the Court granted, with instructions to the Jury, to all of which the Appellee took exception. The taking of notes by the Jurors pertained only to the testimony of these expert witnesses, and the following proceedings were had with respect thereto.

The Court instructed the Jurors, as follows:

"Ladies and Gentlemen of the Jury, let me have your attention for a moment. I am going to have the Deputy Clerk distribute among you pads and pencils, which you may use, if you wish, to record evidence given by a witness in connection with values in this case. It is very difficult, if not impossible, in my opinion, to remember accurately a long list of figures.

"You may not at this time use this memorandum or pad to presently put down what your now recollection is of something that has already occurred. That is improper. I don't deem it necessary to make the explanation as to why, but that you are instructed you may not do; but you may from now on make memoranda of dollars and cents figures, that kind of

data that may be offered from the witness stand by the various witnesses.''

The Attorney for the Appellee at this point took an exception to this proceeding.

The Deputy Clerk, on the Court's instructions, passed pencils and pads among the Jury, and the Court continued:

''I would like to add a few more words in instruction on this issue. Each of you, of course, is responsible for retention of your own pad. In other words, it would be improper for us to gather up the notes that you make. The pads, in other words, the notes you make, they are not to be seen by anyone else any more than you are to tell anyone else what you may have recorded upstairs up to the present moment in your mind. So, you are further instructed each of you shall carefully hold onto any such memorandum that you do make in accordance with these instructions, until the end of the trial.''

The question as to whether the Court in any case may or may not permit the jurors to take notes is, in the opinion of this Court, not a settled problem in Ohio at this time. It seems to this Court that it is a matter largely within the Court's discretion, which should be exercised carefully and with regard to the issues raised in any particular case. It should be borne in mind that in this type of proceedings, an appropriation case, there is no burden of proof and there is no issue other than the amount of compensation to be paid the property owner. In a situation of this kind may the Court permit the taking of notes by the jurors with respect only to the dollars and cents figures testified to by the various witnesses, or must the jurors rely solely upon their memory as to these figures when they retire to reach a verdict?

In the trial of this case, as in most others of this character, both sides used a blackboard to set down in front of the Jury the values and other figures at the time same were testified to by the various witnesses. Under these circumstances did the Court commit prejudicial error in allowing the taking of notes by the jurors?

In *Railway Co.* v. *Ullom*, 11 C. D., 321, 1898, it was held that ''It is a matter of doubt whether it is improper for jurors to make notes of the testimony. On questions of fact judges

make memoranda as to evidence before them, and it would seem that if proper for judges, it would be proper for jurors to do so." This was a negligence case which was reversed on other grounds, and it is true that the Court had not openly permitted the taking of notes with instructions on the point, as in the case at bar. In the course of the opinion on the point the Court used the following language: "As to the charges of misconduct of the jury, both in respect to looking at the frog at the Short Line railroad and as to a juror making notes of the testimony, we think that on the evidence as presented to the trial judge on the motion for new trial, the Court could have found either way, and while it is not necessary to pass upon the question, this Court has very serious doubts whether it is improper conduct on the part of a juror to take notes as to evidence. This Court and every other court we know of, on questions of fact, make memoranda as to the evidence before them, and it would seem to us that if it is proper for a member of this court it would be proper for a juror. One is a jury of twelve as triers of facts, and this Court in appeal cases on the facts is a jury of three, but that question is not before the Court."

In *Palmer* v. *Cowie*, 27 C. C., 617, 1905, it was held in syllabus 5, "The taking of notes by a juror during the course of the trial, which, however, was discontinued upon admonishment by. the Court, is not misconduct for which a new trial will be granted." This case was a suit for rescission of contract for breach of warranty of a horse. The following language appears at page 623 of the opinion: "Speaking for myself, alone, I entertain no grave doubt about it (as to whether taking notes is misconduct). Unless a juror is cautioned not to take notes I know of no rule nor can I think of any principle that would make it misconduct on the part of a juror to take notes any more than on the part of a judge before whom a trial upon facts is being heard, and especially where there are several judges.

"It is true that a juror might by taking notes have more information about the case in the jury room than a juror who did not take notes. It is equally true that there is a great difference in the knowledge of jurors. It is true that there is a difference in the memory power of jurors and of judges, and it is possible that it gives one juror an undue influence with his

fellow jurors, but certainly until a caution is given it would be, to me, a very remarkable thing that a juror could be said to be guilty of misconduct because he took down some notes of the evidence that was being introduced. There was no error in the court refusing the motion for new trial upon that ground, misconduct of the juror in taking notes."

In *Butler* v. *Savin*, 24 N. P., New Series, 243, which was a breach of contract action against a pawn broker, notes were taken by a juror during the Court's charge with respect to dates from which interest could be computed if a verdict were returned for the plaintiff, and it was held by the Court, "It is not misconduct for a juror to make a memorandum of the dates between which interest may be charged, during the course of the charge to the jury upon this subject." In commenting upon this point in the opinion the Court said, "So far from this being misconduct of the juror the Court feels that it was entirely proper, and, indeed, praiseworthy, for the juror to make a memorandum of the interest dates, as the ordinary juror cannot be expected to remember particular dates between which interest is allowed without some written memorandum."

In *David Die Co.* v. *Beltzhoover Electric,* 40 Ohio App., 308, which was an action upon an account for work and labor, the Court during its charge asked, "Has anyone of the jury a pencil"? The record of the case did not show whether the jurors had pencils or whether or not they used them in taking notes. It was argued by counsel that they did take notes and took them to the jury room. The Court held, in Syllabus 5, "Court's inquiry during charge as to whether any one of jury had a pencil held not prejudicial error even if jurors took notes and took notes to jury room." In discussing this point, the Court referred to Thompson on Trials, 2nd Ed., Vol. 2, page 1868, wherein the author reports the fact that some courts do hold the taking of notes by jurors to be misconduct, and that the conception which supports that view is based on the thinking that jurors always must "register the evidence on the tablets of their memory." This Court rejected this approach in the light of present day circumstances, wherein almost everyone is able to read and write, and in conducting the affairs of life the making of notes and memoranda is most common by nearly all persons.

The case of *Corbin* v. *Cleveland*, 74 Ohio App., 199, 1943, affirmed in a per curiam opinion in 144 Ohio St., 32, would seem at first to rule out the exercise of any discretion by the Trial Judge so far as taking notes is concerned at any stage of a trial. Upon careful study of this case, however, this Court does not believe that this case so holds. This was a negligence action against the City of Cleveland for personal injury, in which a verdict for defendant was returned, and at the very outside of the case, before opening statements of counsel were made, the Trial Court, without a request from either side, said that he was going to permit the jurors to take whatever notes they cared to take thruout the trial and furnished the pads and pencils for such purpose, directing that same be collected each day by the bailiff and kept in a sealed envelope and returned the next court session to each juror. Objection to this procedure was taken by both sides. In Syllabus 1 the Court of Appeals held, "It is reversible error for a court without a request of either of the litigants, and, in fact, over their objections, to suggest to the jurors that they may take notes and to furnish each juror, without such juror's request, the necessary materials for taking notes, together with instructions as to how they shall be kept during the trial." In the opinion the following language appears on page 206 and 207: "The courts that find no misconduct on the part of a juror taking notes, do so on the theory that by so doing the juror preserves for his better consideration testimony that might otherwise be overlooked during the deliberation of the jury. This is said to be particularly true where the cases are long and involved. On the other hand, the Courts that hold that note taking constitutes misconduct do so on the theory that the taking of notes might tend to distract the juror's mind from the evidence that is being presented while the juror is busy with his notes. Unless the trial is delayed to afford time to take notes such objections seem sound. . . . If trial procedure is to be changed to the extent as was done in this case, such change should be made by the Legislature, and not by the courts."

There is no question but what the Supreme Court in 144 Ohio St., 32, in its per curiam opinion, approved the opinion of the Court of Appeals, and, in fact, quoted much of it ver-

batim without citing any cases pro or con on the question. The Supreme Court did say, ''This Court approves this conclusion (referring to the opinion of the Court of Appeals) and is of the opinion that the action of the trial court was prejudicially erroneous.'' In the opinion of this Court the following points distinguish the *Corbin case* from the case at bar:—the jury was permitted to take notes from the opening statements thruout the entire trial; it was a negligence action and there obviously were issues of burden of proof and those dealing with substantive law as applied to various fact situations developed by the evidence, and this Court can conceive that note taking by jurors might distract their attention from the evidence then being presented to the point where the jury might miss what was being presented in favor of taking notes on what had already been presented: in other words, that the jury might be so far behind the evidence being presented because of making notes, as to not hear or properly comprehend the presentation of evidence. Again, it is easy to see that evidence might be presented and a note thereof made and the evidence later stricken out and the juror might easily have made a memorandum of that evidence and failed to note in his memorandum the striking of it. It seems to this Court that this is a far cry from the issue in the present case, wherein the note taking was permitted only with respect to a long list of figures dealing with dollars and cents in the value of the property in question, and with the question of damages to residue. If we are to argue that an individual juror's memory on a long list of complicated figures is better than a memorandum thereof made at the time he hears the figures quoted and sees them placed upon a blackboard, only later, however, to be erased therefrom, we are but ignoring a true fact; namely, that the memory, particularly with respect to this subject matter is never as reliable as a written memorandum. Since note taking was permitted in this case only in respect to this type of evidence, it seems to this Court that no prejudice could have resulted therefrom (and none is affirmatively shown), and, in fact, that the practice lends itself to a more accurate consideration of the complicated testimony, ending in a fair verdict for both parties concerned. At least, upon the grounds just mentioned, the Court feels that the

*Corbin case* is readily distinguishable from the case at bar. The Court fails to see where any statutory provision dealing with trial procedure was violated, and if that be true, wherein was a substantial right of Appellee violated so that it may be fairly said that he did not receive a fair trial?

In the face of all the Ohio cases dealing with this general subject matter that this Court has been able to find, it does not seem that any prohibition against the taking of notes by jurors has become so deeply ingrained upon our trial procedure as to require legislative enactment in order for the trial courts to recognize as fact that which truely is a fact; namely, that the ordinary person cannot keep in mind a long list of figures without the help of a memorandum. To argue otherwise is ridiculous.

In 154 A. L. R., 874, the *Corbin case* is reported, and in an annotation starting at page 878 this general problem is annotated. The Court notes that the *Corbin case* apparently is the only case in the country in a court of last resort so holding. Many cases from other jurisdictions, dealing with this subject matter of note taking by jurors, have reached the direct opposite result from that announced in the *Corbin case.*

Thus, in *Omaha Fire Insurance Co. v. Crighton,* 69 N. W., 766 (Nebraska), which was an action upon a fire insurance policy, evidence was introduced concerning a large number of articles of personal property with the claimed value thereof. The Jury, at request of counsel for the insured, was permitted to take notes as to this testimonyy. It was held not to be prejudicial error.

In *Gasparovic v. Reed,* 5 Pa. D and C, 531, reported in the annotation above noted, it was held not to be error to permit jurors to take notes concerning the testimony dealing with doctor bills, hospital bills, etc., in a personal injury action.

Likewise, in *United States v. Carlisi,* 32 Fed. Supp., 479, wherein there were twenty-nine individual defendants and many persons testifying, the taking of notes by the jurors was held not to be prejudicial error. The Court observed, "There is no legal reason why such notes should not be made by jurors. Judges and lawyers make notes. Why not jurors? Certainly the making of notes would better aid their memories and thus

enable them to more intelligently consider the evidence. While it did not happen in this case, I see no objection to all jurors, if they desire, making notes which could be used by them to refresh their memories when we realize that the purpose of a law suit is to do justice rather than make it a game of chance. The Court should make progress with the times."

*Cahill* v. *Baltimore*, 98 Atl., 235 (Maryland) is an appropriation case. In the course of the opinion, at page 238, the following language appears: "We see no objection in a juror taking notes in a case complicated with figures during the examination of testimony and being permitted to take these to the jury room for the purpose of refreshing his recollection, providing the Trial Court is satisfied that such action will not delay the trial or interfere with the juror following the evidence."

In *Chicago & Northwestern Railroad* v. *Kelly*, 84 Fed. 2nd, 569, a personal injury action, plaintiff's counsel asked the jurors in his summation to take down his calculations relative to the damages sustained by plaintiff. In passing on this point as a ground for a new trial (which was granted on entirely different grounds) the Court, in rejecting this contention, said, "No prejudice is shown to have resulted from the request, and we think that the matter of taking notes by jurors is one which can safely be entrusted to the common sense and good judgment of the trial courts. The request that notes be taken by jurors should be addressed to the Court and communicated by it to the jurors, with suitable instructions, if notes are to be taken. . . . In the absence of any showing of prejudice this certainly would not constitute a basis for reversal."

In *United States* v. *Campbell*, 138 Fed. Supp., 344, a prosecution for falsely pretending to be a Federal Officer, the jury, after deliberating some time, requested that certain evidence of prosecuting witnesses be read to them and that they be permitted to take notes thereon. Permission was granted over objection of defendant, and the jury did take notes concerning this re-read testimony. In the course of the opinion the Court cited with approval the language of Judge Learned Hand, in *United States* v. *Charialli*, 184 Fed. 2nd, 907, as follows: "Next is the objection to the judge's refusal to let the jurors take notes of the evidence during trial. The notion at times has

been countenanced that jurors should not be allowed to take notes on the theory they take on undue importance when the jury deliberates. The supposed dangers appear to us far fetched, if not imaginary, but even if we are wrong it has never been suggested that the judge must permit the practice; the question has always been whether he must forbid it, that it is at most a matter of discretion." Moreover, the Court specifically held that it was proper to grant the request of the jury for a reading back of the testimony, and that it was proper to grant the request for the jury to take notes thereof.

*Commonwealth* v. *Tucker,* 76 N. W., 127, 189 Mass., 457, was a murder case. Among the various claimed errors was the taking of notes of testimony by a juror. The Court specifically held that such fact does not require the setting aside of the verdict, but the matter is within the discretion of the Trial Court.

*Commercial Music Co.* v. *Klag,* 288 S. W. 2nd, 168 (Texas), was an action to recover machines seized by the Sheriff in executing a writ of sequestration. During the trial of the action the attorney for defendant handed each juror a pencil and pad and suggested that the jury take such notes of the arguments as they might desire and carry same with them to their deliberations. This was claimed prejudicial error. In passing on this point the Court held, "We overrule this contention and we think it would have been better for attorney for appellee to have requested the Court to have some officer of the court furnish such pencils and pads to the jury so that the attorney would not have been placed in the attitude of attempting to incur favor with the jury by personally giving each juror a pencil and pad. What we are saying is that the mere fact that the jury was provided with pencils and paper pads so they might take notes and take their notes with them into the jury room to be used during their deliberations, did not constitute reversible error."

Reference is also made to 39 Ohio Jurisprudence, 597, Par. 27, Trial; 53 American Jurisprudence, 623, Par. 851; 30 Ohio Jurisprudence, 97, Par. 58 and 61; 40 Ohio Jurisprudence 2nd, 525, Par. 35 and 36; 3 Ohio Jurisprudence 2nd, 757, Par. 780; 89 C. J. S., Par. 456, Trial; 2 Belli Modern Trials, 1720; Section 2309.59, Revised Code.

This Court is of the opinion that permitting the jurors, under proper instructions, in an appropriation case, to take notes of testimony as it is presented, concerning the valuations of lands and buildings, is a matter within the Court's discretion; and in the absence of a showing that a party was prejudiced thereby, and thus did not receive a fair trial, the verdict will not be set aside.

The motion for a new trial will be overruled.