SAMUEL HENRY DILLON *v.* STATE OF MARYLAND

[No. 862, September Term, 1974.]

*Decided July 24, 1975.*

The cause was argued before MORTON, POWERS and MENCHINE, JJ.

*Joseph J. D'Erasmo, Assigned Public Defender,* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *William J. Hickey, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Samuel Henry Dillon was convicted by a jury in the Circuit Court for Montgomery County under counts 1, 5, 7 and 9 of a single indictment. Count 1 charged armed robbery, allegedly occurring on January 22, 1974, and count 5 charged use of a handgun in the commission of that felony. Count 7 charged armed robbery allegedly occurring on January 5, 1974 and count 9 charged use of a handgun in the commission of that felony. Dillon was sentenced to a term of ten years imprisonment under count 1 and to five years consecutively under count 5. He was sentenced to terms of 10 and 5 years respectively under counts 7 and 9 concurrent with the prior sentences. The offenses allegedly were committed at the same 7-11 Store.

Dillon's appeal suggests the following errors:

    I. That the trial court placed improper restrictions on note taking by the jurors.
   II. That the court's charge was erroneous both in omission and content.

I.

*Restriction on Note Taking by Jurors*

After the jury had been sworn, the trial judge said:

    "No note taking, please, except by the Foreman.

There is a pad and a pencil for the Foreman, and he may take notes as he feels is necessary.

"We ask the rest of you not to take notes, for the very simple reason that it is difficult at best to be writing down, unless you are well trained in that field, to be taking notes and also listen to everything that is going on at the same time.

"We want you to pay full time and attention to what comes from the witness stand, because that is the factual situation upon which you must arrive at your verdict.

"No note taking during the opening statement, however, because that is just what they expect to prove.

"No note taking until the evidence commences."

Immediate objection was taken by defense counsel as follows:

"The defendant would object at this time to the Court's ruling that only one of the jurors may take notes in this case, for the reason that every one of the jurors has his own independent recollection.

"If one, and only one, has notes, that one may be the only one whose recollection is weighed in the jury room; therefore, I request that all of the jurors be permitted to take notes, or that none of them be permitted to take notes, including the Foreman. * * * I have no objection to none of the jurors taking notes, not even the Foreman."

The court then responded:

"I think since the Foreman is in charge of the deliberations, if he feels it is necessary on some particular point that he take notes, he can: but that is just to throw it out for discussion, nothing more."

Note taking by jurors apparently has been the subject of appellate discussion in only one case in Maryland. In *Cahill*

*v. M.C.C. of Balto.*, 129 Md. 17, 98 A. 235, after commenting (page 26 [238]) that:

> "Unquestionably it has been the practice for jurors to make rough notes, particularly where figures are involved, during the course of the examination of the witnesses, and take these notes with them when they retire to their room."

The Court said: (page 26-27 [238])

> "We see no objection in a juror taking notes in a case complicated with figures, during the examination of testimony, and being permitted to take these to the jury room, for the purpose of refreshing his recollection, provided the trial Court is satisfied that such action will not delay the trial, or interfere with the juror following the evidence.
>
> * * *
>
> "We have found only one State where in the absence of statute such practice is allowed as a matter of right. In all the other States where the question has arisen, it has been held, as we have stated, not a right, but a discretionary power of the trial Court, with the exception of Indiana, where it is held to be a reversible error to permit it. We think, however, from reason that the better rule is with the weight of authority and so hold."

For extensive discussions upon the subject of note taking by jurors, see: *United States v. Campbell,* 138 F. Supp. 344, 348, *et seq.* (U.S. D. Ct. N.D. Iowa W.D., 1956); Annotation, 154 A.L.R. 878, *et seq.*; Annotation 14 A.L.R.3d 833, *et seq.*

The only Rule making reference to notes of jurors is Maryland Rule 558.[1] That Rule, relating to what *may* be taken to the jury room, provides in pertinent part as follows:

> "b. As of right—Notes
>
> The jury may also take with them notes of the

---

1. Rule 558 is made applicable to criminal cases by Rule 757.

testimony or other proceedings taken by themselves but none taken by any other person."

We do not interpret the quoted portion of Rule 558 as intending a departure from the holding in *Cahill, supra,*[2] that the question *whether* the jurors will be permitted to take notes is within the discretion of the trial judge. We regard the language of the rule permitting jurors *as a matter of right* to take their notes to the jury room with them as applying only *if* the trial judge has not, in the exercise of his discretion, forbidden the taking of notes.[3]

---

**2.** In Raimondi v. State, 265 Md. 229, 288 A. 2d 882, the Court of Appeals speaking generally about Rule 558, but ruling upon a different aspect of that rule, said at 231 [884]:

"[His] argument that Rule 558 did little more than enunciate our prior case law is correct, * * *."

**3.** The A.B.A. Standards Relating to Trial by Jury (Approved Draft, 1968) proposes in Standard 4.2 to make juror note taking a matter of right. The Standard reads as follows:

"4.2 Note taking by jurors.

Jurors may take notes regarding the evidence presented to them and keep these notes with them when they retire for their deliberations. Such notes should be treated as confidential between the juror making them and his fellow jurors."

The commentary upon the standard in its first paragraph says:

"The great majority of the states which have ruled on the question permit the trial judge, in his discretion, to allow jurors to take notes regarding the evidence presented to them during the trial."

The commentary concluded by saying:

" 'Under the standard, jurors are to be afforded the opportunity to take notes in all cases. Once the propriety of note taking is recognized, it must be concluded that there is no legitimate basis upon which a trial judge could exercise his discretion against note taking. Thus, one commentator says with regard to leaving the matter to the judge's discretion:

'This discretion presumably would be exercised to permit the taking of notes in lengthy trials, trials involving many defendants, of many witnesses, with complicated issues, and to forbid the practice in shorter, more simple trials where the dangers might possibly outweigh the necessity and value to be derived from note-taking. The court is said to balance the interests between dangers and necessity. But the dangers increase as the necessity increases. In a short trial, the memory needs no aid, but notes taken could not harm since they are more likely to be accurate and less likely to supplant memory. In lengthy trials, however, where

We have been referred to no case and have found none wherein the precise question here presented, namely, whether the discretion of the trial judge could be said to have been reasonably exercised when note taking was authorized to one but forbidden to other jurors. The contention of counsel for appellant, that "If one, and only one, has notes, that one may be the only one whose recollection is weighed in the jury room", has a distinct appeal to reason. We believe that the exercise of a reasonable discretion requires that all members of a particular jury panel be dealt with uniformly. The contrary course, followed by the trial judge, was erroneous.

In the subject case, however, there is nothing in the record to indicate that the jury's verdict in any way was influenced by the trial court's action. It does not even appear that the jury foreman in fact did take notes. In the absence of any such showing and in the light of the circumstance that the case was neither lengthy nor complex, we do not regard the error as justifying reversal.

In *Chapman v. California*, 386 U. S. 18, 22, 17 L.Ed.2d 705, 709, 87 S. Ct. 824, 827, the Supreme Court, after pointing out that "[a]ll 50 States have harmless-error statutes or rules", declared that: "All of these rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." See also: *Lamar v. State*, 5 Md. App. 594, 598, 249 A. 2d 192, 194-95, and cases therein cited. In the subject case we find no likelihood that the ruling as to the jury note taking changed the result of the trial. The error does not justify or require

the memory may fade, the notes are important. There is greater danger in their being inaccurate, because of the volume of notes taken, or incompleteness; and as the memory fails, the notes become the memory itself. If the purpose of allowing the practice is to better enable the jury to reach a proper result, it would appear this purpose is served in all trials, and that there is no benefit in leaving the matter discretionary with the court.' " '

In the absence of any action by the Rules Committee or the Court of Appeals on the subject, we do not deem it appropriate for this Court to depart from the widely held doctrine that the matter is properly to be left to the discretion of the trial court, a doctrine to which Maryland subscribed in Cahill, *supra*.

reversal. *Fisher v. Strader*, 160 A. 2d 203, 204 (Pa. 1960). We are persuaded from our examination of the record that the appellant received a fair and impartial trial.

## II.

### (a) The suggested omissions

In his exception to the charge of the court in this area, defense counsel had said:

> "I would also like to request the Court to give an instruction concerning alibi, [1] * * * to define what an alibi is, and [2] indicate that the defendant does not have the burden of proving that beyond a reasonable doubt, but need only to do so in sufficient amount to raise a doubt in the minds of the jurors about the State's case. * * * [3] I would also request an instruction to the jury concerning photographic identification, that they should weigh the testimony."

Defense counsel proffered to the trial court no suggested definition of "alibi." In the absence of such a course we find that the court's advisory instruction, read in the context of the testimony, adequately instructed the jury as to alibi. The defense witnesses, including the traverser himself, had testified to the effect that appellant was elsewhere than at the crime scene at the times of the offenses. The American Heritage Dictionary of the English Language defines the word "alibi" as follows: "A form of defense whereby a defendant attempts to prove that he was elsewhere when the crime in question was committed."

The trial judge had told the jury:

> "There is no dispute, but what there was a robbery; and there is no contradiction or dispute over the fact that the person who did that had in his possession a gun of some type.
>
> "The defense in this case is one of identity, and you heard the State's witnesses, and you heard the defense witnesses.

"This is a question now that you must resolve as to whether this is a man who is guilty of these crimes."

In short, the trial court made clear that the subject case turned upon the credibility of witnesses as to whether the appellant was or was not the perpetrator of the two robberies. An essential factor in the determination of that question was the resolution of conflicting evidence as to whether the appellant was or was not "elsewhere when the crime in question was committed." The trial court's charge made quite clear that the appellant must be found not guilty if the jury believed the defendant and his witnesses. When the meaning of a charge is implicit and clear, definitive terms are discretionary. *White v. State*, 23 Md. App. 151, 326 A. 2d 219.

The second aspect of the exception as to alibi requested by the defendant, itself involved a request for an erroneous instruction. As the court explained: "I have told them there is no burden on the defendant." The trial court was entirely correct in pointing out that there is no burden upon a defendant to prove alibi, as we declared in *Robinson v. State*, 20 Md. App. 450, 456, *et seq.*, 316 A. 2d 268, 271, and reiterated in *Daniels v. State*, 24 Md. App. 1, 6, 329 A. 2d 712, 715-16.

Nor do we find error in the rejection of appellant's request for an instruction as to the weight of the testimony with particular reference to photographic identification.

The trial judge had included in his charge the following:

"You are the sole determiner of the weight to be given to the evidence. You are adults in the community that have been selected to try this case.

"This is an extremely serious case, serious to the State, and equally serious to the defendant, so it requires your careful deliberation.

"You may believe all that a witness said. You may believe part of what a witness said, and disbelieve part of it.

"If you feel that something has been said that is not worthy of belief, you can throw it out entirely.

"This is your duty and your prerogative to draw on your experience in the community as adults that have been selected to try this case, and evaluate it carefully and impartially.

"That is all any of us ask, the State, or the defendant, and the Court.

"We are all looking for one thing, to have a fair trial to the State and to the defendant, and a fair and impartial verdict.

"Pay careful attention to counsel, because they will now argue to you, and then you will retire to deliberate."

The trial judge, responding to counsel's comment that the jury was entitled to pass upon the question whether there was an impermissibly suggestive procedure and was entitled to disregard the photographic identification, said "You may argue that." We think that the general charge as to a determination of the weight and effect of evidence was sufficient. Trial counsel was expressly authorized to make his suggested argument as to photographic identification procedures and their effect within the framework of the charge as given. It is not necessary to grant requested instructions if the matter is fairly covered by instructions actually given. *Harris v. State,* 11 Md. App. 658, 662-63, 276 A. 2d 406, 408.

We perceive no error of omission in the charge.

### (b) Alleged error in content of charge

In the course of the trial court's charge, subsections (a) and (d) of Article 27, § 36B were read in their entirety.[4] Trial counsel objected, saying:

---

4. "(a) *Declaration of policy.*—The General Assembly of Maryland hereby finds and declares that:

(i) There has, in recent years, been an alarming increase in the

"[I]t was improper to read into the record the portion of the statute containing the handgun use.

THE COURT: Why do you think it is improper?

MR. DEUTCHMAN: I believe that it is not the law, that the Jury should not be instructed on that as being part of the law.

I think it unduly prejudices the Jury to read into the record an editorial comment by the legislature on the purpose of the law.

I would request a mistrial on that ground * * *."

Inclusion of a pertinent statute within the court's advisory instruction is proper. *Parker v. State,* 7 Md. App. 167, 254 A. 2d 381, cert. den. 91 S. Ct. 1670, 29 L.Ed.2d 150. We have been referred to no Maryland case—and we have found none — in which a declaration of legislative policy incorporated within a penal statute was read to the jury. The Supreme Judicial Court of Massachusetts, however, twice has ruled upon the question. In *Commonwealth v. Sansone,* 147 N. E. 574 (1925) it was said at 575:

"It is not error for the trial court in the course of a charge to state the legislative purpose in enacting the statute upon which the indictment is based."

---

number of violent crimes perpetrated in Maryland, and a high percentage of those crimes involve the use of handguns;

(ii) The result has been a substantial increase in the number of persons killed or injured which is traceable, in large part, to the carrying of handguns on the streets and public ways by persons inclined to use them in criminal activity;

(iii) The laws currently in force have not been effective in curbing the more frequent use of handguns in perpetrating crime; and

(iv) Further regulations on the wearing, carrying, and transporting of handguns are necessary to preserve the peace and tranquility of the State and to protect the rights and liberties of its citizens.

(d) *Unlawful use of handgun in commission of crime.* — Any person who shall use a handgun in the commission of any felony or any crime of violence as defined in § 441 of this article, shall be guilty of a separate misdemeanor and on conviction thereof shall, in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor, be sentenced to the Maryland Division of Correction for a term of not less than five nor more than fifteen years, and it is mandatory upon the court to impose no less than the minimum sentence of five years."

Again, in *Commonwealth v. Brunelle*, 277 N.E.2d 826 (1972), it was said at 831:

> "A judge may inform a jury about the legislative purpose of a statute, if he does so accurately."

Appellant cites *State v. Locks*, 382 P. 2d 241 (Arizona, 1963) as supporting his contention that the trial court was in error. We find it readily distinguishable. In *Locks* the Court reversed conviction upon the ground "that the statute was grossly prejudicial to the rights of defendant" (at p. 243). In doing so the Court declared that the incorporation of the policy declaration of the statute in the charge of the trial court:

> "* * * impliedly invited the jury to construe §§ 13-821 and 13-822 by giving to those sections a liberal meaning in favor of the state to protect the children of the state from any person whom the jury might believe had improperly conducted himself in a fashion to encourage the delinquency of a child. No more roving unrestrained authority to convict the defendant of the crime charged could possibly have been authorized, an authority unrestrained by any of the other accepted modes for the determination of the meaning of the language used in a statute.
>
> "While we have construed the language of §§ 13-821 and 13-822 as being broad enough to sustain a conviction for the crime charged we, of course, can not say with certainty that under the instructions this was the basis for the jury's verdict. What liberal concepts the jury attached to the language of the legislature to protect children is impossible to tell. Of what it in fact convicted the defendant is unknown." (at p. 244)

We find no such prejudicial effect resulting from incorporation of both subsections (a) and (d) of § 36B in the charge. In the absence of such effect, we adopt the

Massachusetts view. There being no error in the instruction, the motion for mistrial, of course, properly was denied.

We find no reversible error.

*Judgments affirmed.*