# RONALD FRANCIS ELCHIN v. STATE OF MARYLAND

[No. 312, September Term, 1980.]

*Decided December 12, 1980.*

The cause was argued before THOMPSON, MOORE and WILNER, JJ.

*James R. White* for appellant.

*F. Ford Loker, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County,* and *Frank Weathersbee, Deputy State's Attorney for Anne Arundel County,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

An unfortunate shooting incident resulted in appellant's conviction, on September 25, 1979, by a jury in the Circuit Court for Anne Arundel County (Childs, J.), of manslaughter and use of a handgun in the commission of a felony. On the manslaughter count, a five-year suspended sentence was imposed. For the handgun violation, the appellant received a minimum five-year mandatory sentence pursuant to Md. Ann. Code art. 27, § 36B. On appeal, he challenges the handgun conviction.

I

The salient facts are as follows: Appellant, Ronald Francis Elchin, 34, was returning home from work in his automobile, a two-door Corvette, late in the evening of December 15, 1978. To reach his residence on the Severn River in Anne Arundel County, he had to traverse a private lane which services three other homes in the vicinity.[1] Driving along the lane, he noticed an automobile parked off to the left in a grassy clearing. Appellant was aware that the area was frequently used by trespassers as a lover's lane and was often strewn with litter. Elchin stopped, left his vehicle, and approached the other car, a Pontiac with a glass "T-type" roof through which one could observe the occupants in the front seat. They were two teenage males; the victim of the shooting, George Kelley North, was in the driver's seat. The other male, Victor O. Willey, was in the front passenger seat and was rolling a cigarette. Two teenage females were sitting in the back.

Elchin asked the group to leave because it was private property but they exhibited an unwillingness to do so. After a little more conversation, Elchin advised them that he was going to call the police, and returned to his own car. He backed it slightly to block the lane so as to prevent the interlopers from departing before the police arrived. He then proceeded to walk to his home nearby, and as he walked, he "heard people banging" on his car. From his home, he called the county police and requested an officer. Elchin then

---

1. By deed, appellant had an easement in the lane.

secured a gun that was kept in his house and placed it in a holster which he strapped to his body. When asked why, he responded, "[t]o protect my property, I knew there was two of them, I — never dreamed what was going to happen next."[2] He returned directly to his car, walking past the North vehicle. The area was "extremely dark."

Elchin testified that he intended to wait for the police inside his car but the door handle was jammed and, therefore, the door would not open. The two males exited the Pontiac, 22 feet away, and began walking towards him. Elchin testified that he told the two males "I have a gun, just stay right over there."[3] Willey stated that no warning was given. Elchin also testified that he then fired four warning shots but that the youths continued to approach him.[4] He thought that North and Willey were approximately five to eight feet in front of him when he fired two more shots, the first of which was aimed "low." Elchin testified that he raised the pistol to fire the last shot at the boys. North dropped to the ground and died almost instantly from two gunshot wounds to the chest. The Willey youth was not hit. Elchin then ran to a nearby firehouse where he surrendered the pistol and requested an ambulance, saying he had just shot somebody.

A search of the trunk of the Pontiac after the incident revealed beer, liquor, hashish oil, hashish, cocaine and marijuana. At the time of his death, North had a blood alcohol content of .18 per cent.

The case was submitted to the jury on charges of second degree murder, manslaughter, and the use of a handgun in the commission of a felony. As previously stated, guilty

2. On cross-examination appellant said he told the police that the reason he returned to his car with a gun was to protect himself, and to keep the people there until the police arrived, although "that was not the prime reason."

3. In a prior statement given to the police, Elchin said that he did not tell the youths that he had a gun.

4. Appellant described the size of the youths as "big" and stated that he feared for his life. North, age 19, was 5' 9" and weighed 210 pounds. Willey was 6' and weighed 175 pounds.

verdicts were rendered for manslaughter and the handgun violation. On appeal, the following questions are presented:

"I. Did the court err in submitting the handgun charge to the jury without instructing them fully on the handgun law in Maryland, including the legislative purpose, which is part of the statute?

"II. Did the Court err in refusing to give preliminary instructions to the jury prior to the taking of the testimony and did the Court err in failing to give final instructions in the proper order to the jury after testimony had been completed?"

## II

Initially, we agree with the appellee that the appellant's claimed exception below to the trial court's refusal to read in its jury instructions the legislative purpose contained in Article 27, § 36B (a) is not found in the record. Maryland Rule 757 f. The record reveals that a portion of defense counsel's exceptions subsequent to the court's advisory instructions were "completely unintelligible" despite warnings by the court reporter that "he wasn't being picked up." Here, appellant failed to correct the transcript. *See White v. State,* 8 Md. App. 51, 54, 258 A.2d 50, 51 (1969). Maryland Rule 1027 b. Nevertheless, we will consider the merits of the argument.

Appellant contends that the court did not instruct the jury fully as to the handgun statute, Article 27, § 36B, because it failed to include the legislative policy contained in subsection (a) in its instructions. The instructions relating to the handgun count were as follows:

"If you find beyond a reasonable doubt that the defendant used a handgun during the commission of a felony, and a felony would include second degree murder, then that is a crime and the defendant should be found guilty of Count 4 if you so find. Now, you have been addressed as to the

possible penalties for that count. I advise you that you should not, in your deliberations, to sway [*sic*] or be persuaded by any possible penalty because that is not your province, that is the province of the Judge in connection with the guidelines issued to him by the legislature. It is not your province to determine what sentence should be served in the event you find him guilty on any of these crimes."

The omitted preamble of Article 27, § 36B, containing the legislative purpose, states:

"(a) *Declaration of policy.* — The General Assembly of Maryland hereby finds and declares that:

(i) There has, in recent years, been an alarming increase in the number of violent crimes perpetrated in Maryland, and a high percentage of those crimes involve the use of handguns;

(ii) The result has been a substantial increase in the number of persons killed or injured which is traceable, in large part, to the carrying of handguns on the streets and public ways by persons inclined to use them in criminal activity;

(iii) The laws currently in force have not been effective in curbing the more frequent use of handguns in perpetrating crime; and

(iv) Further regulations on the wearing, carrying, and transporting of handguns are necessary to preserve the peace and tranquility of the State and to protect the rights and liberties of its citizens."

Appellant's point is that the instant offenses did not occur "on the streets and public ways," and he seizes upon the language of the "Declaration of policy" in Article 27, § 36B (a) above, that a substantial increase in the number of persons killed or injured is traceable, in large part, "to the carrying of handguns *on the streets and public ways....*" (Emphasis added.) We find no merit in appellant's argument that it was error for the court to exclude from its instructions

the legislative purpose found in § 36B (a). A violation of subsection (d) does not depend upon the carrying or use of a handgun on the streets and public ways because there is no language to that effect anywhere in that subsection.[5]

There is no ambiguity in the statute, and therefore no need to resort to its "Declaration of policy." *See Gibson v. State,* 204 Md. 423, 432, 104 A.2d 800, 804-05 (1954); *Neal v. State,* 45 Md. App. 549, 556-58, 413 A.2d 1386, 1390-91 (1980).

Elchin relies upon *Dillon v. State,* 27 Md. App. 579, 342 A.2d 677 (1975), *aff'd,* 277 Md. 571, 357 A.2d 360 (1976), wherein the trial court's charge included the reading of the preamble found in subsection (a). In *Dillon,* however, defense counsel objected to the *inclusion* of that subsection in the court's instructions; on appeal, this Court found "no prejudicial effect" and affirmed the conviction. Judge Menchine, speaking for the Court, stated:

> "Inclusion of a pertinent statute within the court's advisory instruction is proper. *Parker v. State,* 7 Md.App. 167, 254 A.2d 381, *cert. den.* 91 S. Ct. 1670, 29 L.Ed.2d 150. We have been referred to no Maryland case — and we have found none — in which a declaration of legislative policy incorporated within a penal statute was read to the jury. The Supreme Judicial Court of Massachusetts, however, twice has ruled upon the question. In *Commonwealth v. Sansone,* [252 Mass. 71], 147 N.E. 574 (1925) it was said at 575:
>
> 'It is not error for the trial court in the

---

5. Article 27, § 36B (d) provides:

"(d) *Unlawful use of handgun in commission of crime.* — Any person who shall use a handgun in the commission of any felony or any crime of violence as defined in § 441 of this article, shall be guilty of a separate misdemeanor and on conviction thereof shall, in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor, be sentenced to the Maryland Division of Correction for a term of not less than five nor more than fifteen years, and it is mandatory upon the court to impose no less than the minimum sentence of five years."

course of a charge to state the legislative purpose in enacting the statute upon which the indictment is based.'

Again, in *Commonwealth v. Brunelle,* Mass., 277 N.E.2d 826 (1972), it was said at 831:

'A judge may inform a jury about the legislative purpose of a statute, if he does so accurately.' "

*Dillon, supra,* 27 Md. App. at 588-89, 342 A.2d at 682-83.

In affirming this Court, it is significant that the Court of Appeals, although also finding no prejudicial error, spoke with disfavor of the trial court's inclusion of the preamble of Article 27, § 36B in its instructions:

"Even though, as the Massachusetts court opined in *Commonwealth v. Brunelle, supra,* the trial judge may 'have been wiser to have avoided entirely the risk of prejudice' in reading verbatim the preamble of the statute, and may have, with greater deftness, undertaken to remove from the minds of the jury any apparent confusion concerning the identity of the charges set forth in the separate counts, we do not find that a recitation of the legislature's 'Declaration of Policy' constituted error. *Although we do not encourage such a practice,* the recitation of the 'Declaration of Policy' did no more than relate the purposes behind the enactment of the statute ... was accurately stated, ... and was an aid and means of enlightment to the deliberations of the jury as judges of the law, in construing the provisions of Art. 27, § 36B(d). . . ." (Emphasis added.)

*Dillon, supra,* 277 Md. at 585, 357 A.2d at 369.[6] Appellant's reliance on *Dillon* is misplaced. The Court of Appeals and this Court did not find error in the reading of the preamble

---

6. In *Dillon,* Judge Levine filed a dissenting opinion in which Judge Eldridge joined. In his dissent, Judge Levine reasoned that the instruction was both erroneous and prejudicial.

in the court's charge; but the case simply does not support appellant's contention that it was error for the lower court to decline to read it. Therefore, we reject his first contention.

### III

Appellant's second argument embraces two points. First, he contends that the lower court erred in refusing to give preliminary instructions to the jury prior to the taking of testimony. Appellant cites no authority to support his proposition. Suffice it to say, preliminary instructions are within the trial court's discretion.[7] Indeed, under Maryland Rule 757, pertaining to advisory instructions in criminal cases, even the giving of final instructions is discretionary unless requested by a party. In a recent case, the Court of Appeals noted, "Rules 757(b) and 757(d) define an 'instruction' as a communication from the judge to the jury made *after* the close of the evidence. Ordinarily, preliminary remarks do not perform the function of jury instructions." *Lansdowne v. State,* 287 Md. 232, 243, 412 A.2d 88, 94 (1980) (Emphasis added) (trial judge who explained the term "reasonable doubt" in preliminary instructions committed reversible error by refusing the accused's request to explain that term again after the close of the evidence).

The second point presented by the appellant is that, although the final instructions were basically complete as given, the court erred in failing to give them in the "proper order" and that the instructions, which included a supplemental charge, served to confuse and confound the jury. Again, appellant's objection is absent from the record. Maryland Rule 757 f. Therefore, it is not preserved for review. Maryland Rule 1085. However, even if we were to

---

7. As stated in 3 ABA Standards for Criminal Justice, ch. 15-3.6 (e) (2nd ed. 1980):

"Before the taking of evidence, the court may give preliminary instructions to the jury deemed appropriate for their guidance in hearing the case. After the arguments are completed, the court should give the jury all necessary instructions."

See *generally* Annot., 89 A.L.R.2d 199, 200 n.2 (1963).

consider it, we would find no merit in this argument. The instructions, taken as a whole, accurately stated the law. As this Court stated in *Shotkosky v. State,* 8 Md. App. 492, 261 A.2d 171 (1970), "[i]t is not necessary for this Court to decide that the instructions as given were the clearest of all possible instructions. It is sufficient that the instructions taken as a whole correctly stated the law." *Id.* at 508-09, 261 A.2d at 181. We therefore affirm.

*Judgments affirmed; appellant to pay the costs.*