382 P.2d 241

**STATE of Arizona, Appellee,**

**v.**

**Charles LOCKS, Appellant.**

**No. 1218.**

Supreme Court of Arizona.

En Banc.

May 29, 1963.

Robert W. Pickrell, Atty. Gen., and Stirley Newell, Asst. Atty. Gen., for appellee.

Herbert L. Ely, Phoenix, for appellant.

STRUCKMEYER, Justice.

By direct information in the Superior Court of Maricopa County, appellant, Charles Locks, was charged with contributing to the delinquency of a minor, Count I and exhibiting and keeping for sale obscene and indecent pictures and writings, Count II, both misdemeanors. The court below dismissed Count II on defendant's motion in the belief that the Statute, A.R.S. § 13–532 lacked constitutional validity in that it did not specifically require scienter. We reversed holding that scienter was implicit. State v. Locks, 91 Ariz. 394, 372 P.2d 724. Meanwhile, trial was had on Count I and the jury returned a verdict of guilty. This appeal is from the judgment and sentence thereon.

Defendant is the proprietor of "Charlie's Hobby Shop" in Phoenix, Arizona. In his business he sold and kept for sale certain magazines referred to in the evidence as "Girlie" magazines. These magazines principally contain pictures of the female in various states of disarray, some more so than others. In some there are interspersed printed articles, factual and fictional, dealing with sex in heavily disguised language. Of the eight publications in question, three

of eight have printed on the covers "Adults Only" or "Adult Reading".

On the 25th day of February, 1961, Roger Allen Sul, age seventeen, being then in the defendant's hobby shop was asked by defendant if he would like to look at some "Girlie" magazines. Sul on that occasion bought several of the magazines. On the 25th day of March, 1961, he purchased other magazines of a like content.

By Statute, A.R.S. § 13–822, subd. A insofar as it is applicable here, "A person who by any act, causes, encourages or contributes to the * * * delinquency of a child * * * or who for any cause is responsible therefor is guilty of a misdemeanor * * *." "Delinquency" is defined by A.R.S. § 13–821, subd. C as "Any act which tends to debase or injure the morals, health or welfare of a child." Since one of the principal purposes of the statute is to prevent the delinquency of children, acts or omissions which tend to cause or contribute to a minor's delinquency are made crimes and punishable as such. Under the statute it was and is unnecessary for the prosecution to establish that defendant's acts actually debased or injured the morals of the child, Loveland v. State, 53 Ariz. 131, 86 P.2d 942; cf. People v. Miller, 145 Cal.App.2d 473, 302 P.2d 603; People v. Calkins, 48 Cal.App.2d 33, 119 P.2d 142, but only that they may tend to do so. Moreover, the statute is comprehensive

enough to include acts leading to unacceptable social patterns in later adult life.

The information charged that the defendant on or about the 25th day of March, 1961:

" * * * did then and there, by his wrongful and improper acts and conduct, wilfully and unlawfully encourage and contribute to the delinquency of one Roger Allen Sul, who was then and there a male child under the age of eighteen years, * * * by exhibiting and selling to said Roger Allen Sul and inducing him to buy obscene and indecent writings, papers, books and pictures. And * * * did then and there by his said aforesaid acts tend to debase and injure the morals, health and welfare of the said Roger Allen Sul, * * *."

It is to be noticed the information specifies the act of selling obscene or indecent writings, papers, books and pictures as tending to debase and injure the morals, health and welfare of the child. The prosecution categorically classifies the publications as obscene but whether they are so in fact is a matter unrelated to the inquiry here. It can not be doubted but that the jury could find that the sale of publications or material which would tend to corrupt a child's mind would contribute in some measure to debase and injure his morals. It could have believed that to the immature

the suggestion that meretricious sexual relations are acceptable social conduct may be more injurious to the welfare of the child than an act of physical ravishment.[1] Hence, we do not find it necessary to reach the question whether these publications are obscene so as to be without the protection of the First Amendment to the Constitution of the United Staets. E. g. Manual Enterprises v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639; Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498.

■ Defendant has assigned as error that there was no showing he encouraged or contributed to the delinquency of a minor. The short answer is the testimony established that the original purchases on February 25th, 1951 were induced by the defendant directing the minor's attention to the magazines. If this were not enough, we would still be of the view that one whose choice of business is that of defendant's has the responsibility of seeing that this type of publication does not reach the hands of the emotionally immature. If knowledge of content were necessary, the covers alone in the instant case would be sufficient to alert the vendor thereof.

■ Defendant assigns as error the admission of the testimony of the minor, Kenneth Farr, age fourteen, that he was sold similar types of publications. The evidence was admissible to show the absence of mistake or accident. State v. Little, 87 Ariz. 295, 350 P.2d 756, 86 A.L.R.2d 1120; Dorsey v. State, 25 Ariz. 139, 213 P. 1011.

■ We now pass to the point defendant raises which we think is clearly error. By Statute, A.R.S. § 13–827 the legislature directed how §§ 13–821 through 13–825 should be construed.

§ 13–827, subd. A reads:

"Construction and effect of article

"A. This article shall be liberally construed in favor of the state for the protection of the child from neglect or omission of parental duty toward the child, and also to protect children of the state from the effects of the improper conduct, acts or bad example of any

---

1. There is not here a question of reducing the reading matters of the adult population of the State of Arizona to things fit only for children. The distinction we draw has been observed by others.

"Different factors come into play, also, where the interest at stake is the effect of erotic expression upon children. The world of children is not strictly part of the adult realm of free expression. The factor of immaturity, and perhaps other considerations, impose different rules. Without attempting here to formulate the principles relevant to freedom of expression for children, it suffices to say that regulations of communication addressed to them need not conform to the requirements of the first amendment in the same way as those applicable to adults. * * *" Toward a General Theory of the First Amendment, Thomas I. Emerson, 72 Yale Law Journal 877, 939.

person which may be calculated to cause, encourage or contribute to, the dependency or delinquency of children, although such person is in no way related to the child."

The court below over the defendant's objection read the statute to the jury as part of its charge. We are compelled to agree that the reading of the statute was grossly prejudicial to the rights of defendant.

■ It is the universal rule of law that the proper interpretation of a statute is a question for the court, being wholly a judicial function. Even in civil cases it has been repeatedly held that the question of the construction of a statute should not be submitted to a jury. People v. Peden, 109 Ill.App. 560; Howes v. Nathan, 15 Ill.App. 2d 48, 145 N.E.2d 291; Seybert v. County of Imperial, 162 Cal.App.2d 209, 327 P.2d 560; Trustees of University v. City of Columbia, 109 S.C. 244, 93 S.E. 934; Goins v. Board of Trustees, 169 N.C. 736, 86 S.E. 629; Henrie v. Rockey Mountain Packing Corp., 113 Utah 444, 202 P.2d 727; Vogelsang v. Sehlhorst, 194 Md. 413, 71 A.2d 295.

■ The purpose of statutory construction is, of course, to determine its real meaning. The rule of strict or liberal construction of penal statutes is only one of several factors to be considered in determining legislative intent and it is utilized with the various other rules of construction in discerning such intent. People v. Kirkrand, 397 Ill. 588, 74 N.E.2d 813; State v. Broussard, 213 La. 338, 34 So.2d 883; Jenness v. State, 144 Me. 40, 64 A.2d 184; Willis v. American National Life Insurance Co., (Mo.App.) 287 S.W.2d 98.

In the instant case in reading A.R.S. § 13–827, subd. A to the jury the trial court impliedly invited the jury to construe §§ 13–821 and 13–822 by giving to those sections a liberal meaning in favor of the state to protect the children of the state from any person whom the jury might believe had improperly conducted himself in a fashion to encourage the delinquency of a child. No more roving unrestrained authority to convict the defendant of the crime charged could possibly have been authorized, an authority unrestrained by any of the other accepted modes for the determination of the meaning of the language used in a statute.

While we have construed the language of §§ 13–821 and 13–822 as being broad enough to sustain a conviction for the crime charged we, of course, can not say with certainty that under the instructions this was the basis for the jury's verdict. What liberal concepts the jury attached to the language of the legislature to protect children is impossible to tell. Of what it in fact convicted the defendant is unknown.

We are therefore compelled to set aside defendant's conviction with directions to grant his motion for a new trial.

So ordered.

BERNSTEIN, C. J., UDALL, V. C. J., and JENNINGS and LOCKWOOD, JJ., concur.