CLARKE ET AL. *v.* COUNTY COMMISSIONERS
FOR CARROLL COUNTY ET AL.

[No. 86, September Term, 1973.]

*Decided November 27, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Ernest C. Trimble*, with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellants.

*Donald J. Gilmore* and *Charles M. Preston*, with whom were *L. Awalt Weller, Charles O. Fisher, Ralph G. Hoffman* and *Walsh, Fisher & Gilmore* and *Hoffman & Hoffman* on the brief, for appellees.

LEVINE, J., delivered the opinion of the Court.

This appeal arises out of a bill in equity for declaratory and injunctive relief brought by appellants (the Clarkes and the Bays) in the Circuit Court for Carroll County. Initially, the defendants (appellees) named in the suit were the county commissioners, the Planning and Zoning Commission (the commission) and Dr. Raymond T. Murphy, whose filing of a preliminary plan of subdivision and record plat precipitated this dispute. Several other parties intervened as defendants, but the chancellor dismissed the suit against them and Dr. Murphy after sustaining their demurrers to the bill of complaint. Following a hearing on the merits, the chancellor ruled in favor of appellees. This appeal is from that ruling and the earlier dismissal of the suit against Dr. Murphy.

Since the case was tried pursuant to a stipulation, the material facts are undisputed. Dr. Murphy and his wife (the Murphys), own an irregularly-shaped parcel of 237 acres fronting on Uniontown, Frizzleburg, Hahn's Mill and Jasontown Roads in Carroll County. The Clarkes

own a parcel of $4^1/_2$ acres, and the Bays own 67.55 acres, both located on Uniontown Road. The land owned by the parties is classified in the "A" Agricultural District under Article 6 of the Carroll County Zoning Ordinance. One of the many "principal permitted uses" listed in the "A" Agricultural District is the following:

> "(d) Dwellings (detached), single-family and two-family."

On or about February 8, 1972, the Murphys submitted to the commission, for its approval, a preliminary plan of subdivision (the plan) for the residential development of their property known as "The Meadows." The plan divided the 237 acres into 40 lots ranging in size from 2.6 to 17.9 acres. The commission considered the plan at a number of meetings, and then approved it on April 19, 1972. Although that action was taken over the objection of the Clarkes and Bays, no public hearings were held since they are not required by the county's subdivision regulations. As we shall observe later, it is not contended that the plan failed to conform in any respect with those regulations. After gaining approval, the Murphys recorded a plat showing a portion of the lots on the plan. It appears that the commission has previously approved other subdivision plans for land situated in the same zoning classification, eventually leading to the development of such property into residential lots.

Accompanied by a request for appropriate declaratory and injunctive relief, these contentions have been advanced by appellants both in the trial court and on appeal:

1. That the zoning ordinance reflects an intent to restrict the "A" Agricultural District to agricultural uses only; and does not permit the development of residential subdivisions, which must be confined to one of the "R" districts.

2. That this intent is borne out by the preamble or "purpose" clause to Article 6:

> "The purpose of this District is to provide for continued farming activity, individual homes where no public water and sewerage facilities are

generally available, and the many uses which do not require such facilities and which may be more suitably located outside of the urban-type growth of the larger communities of the county. While several smaller communities may appear in this District, it comprises, generally, for the most part, the rural portions of the county."

3. That the action of the commission in approving the plan constitutes "illegal" zoning, since its functions are limited to the planning process, and rezoning applications are required to be heard and decided by the county commissioners.

4. That, insofar as the commission's action did actually constitute a rezoning, it was "illegal" for the additional reason that the correct procedure for rezoning applications, found in Maryland Code (1957, 1970 Repl. Vol.) Art. 66B, §§ 4.04, 4.05 and in certain provisions of the county zoning ordinance, was not observed.

5. That among the requirements prescribed for zoning applications is that there be a public hearing, and none was granted here.

Following the hearing on the merits, the chancellor held the matter sub curia, and then filed a thoroughly-considered opinion and order which answered affirmatively the single question submitted to him by agreement of the parties:

" 'Is land such as "The Meadows," zoned "A" Agricultural District as provided in Article 6 of the Carroll County Zoning Ordinance susceptible to subdivision without a reclassification or rezoning to an "R" Residential District?' "

Appellants present the identical question as the principal issue to be decided on this appeal, and we also shall answer it affirmatively.

As we view this case, the determinative question presented for our consideration is whether the action taken by the commission actually amounted to the legislative function of rezoning, in which event it was clearly illegal; or

whether it correctly fell within the planning role of the commission. If it was the latter, as the chancellor in effect held, then its action in approving the plan was proper. Since we are in agreement with the chancellor's decision on this basic issue, it is unnecessary for us to discuss the many subsidiary questions into which appellants have fragmented their argument.

Nor is it necessary for us to review the numerous decisions — of this and other courts — and the treatises, which both sides have presented in defining "zoning" and "planning." As we have already suggested, the answer here does not lie in distinguishing between those two functions in the abstract, but turns on whether approval of the plan had the result of allowing in the "A" Agricultural District a use not provided for in the zoning ordinance. If it did, the commission acted incorrectly, and thus, in effect, engaged in zoning, which is clearly a legislative function, *Prince George's Co. v. McBride,* 268 Md. 522, 528, 302 A. 2d 620 (1973); *Scull v. Coleman,* 251 Md. 6, 246 A. 2d 223 (1968); *Ark Readi-Mix v. Smith,* 251 Md. 1, 246 A. 2d 220 (1968), that is committed to local legislative bodies and municipalities, and not to planning commissions, *Prince George's Co. v. McBride, supra.*

Sections 5.02 et seq. of Art. 66B expressly provide that county planning commissions shall have jurisdiction over subdivision plans and plats, which are to be approved by them in accordance with validly enacted regulations. Such regulations have been adopted for Carroll County pursuant to the enabling provisions of Art. 66B, and are a part of the record before us. No contention is made by appellants that the plan in controversy here failed to comply with the subdivision regulations in any respect.

In sum, therefore, approval of subdivision plans is unquestionably in the commission's province; hence, subject to our decision on the main issue, to which we now turn, what the commission did here plainly did not constitute an invasion of the zoning function delegated by § 4.01 of Art. 66B to the county commissioners as the body properly entrusted with that legislative task.

As we noted earlier, appellants' contention focuses primarily on the "purpose" clause or preamble to Article 6, which we have previously quoted. This, they say, establishes the intent that land in the "A" agricultural zone "is to be used for farming," and not "for residential development," which must occur in one of the "R" residential districts. They explain away subsection (d) of § 6.1, which designates single-family and two-family detached dwellings as among the principal permitted uses in the agricultural zone, by insisting that it merely ¯ " 'describe[s] the types of dwellings' " which can be built in that classification. We think they place an unduly restrictive gloss on the clear and unambiguous language of subsection (d); and that it unqualifiedly provides for single-family dwellings as one of the principal permitted uses in the agricultural district.

Although Article 6 includes several principal permitted and conditional uses which one would normally expect to find in the agricultural zone, the legislative intent to *limit* the district to agricultural uses cannot be found in the body of that Article. As we peruse the permitted and conditional uses, we observe a number of them, apart from subsection (d), that negate any intent to restrict the zone to agricultural pursuits such as farming.[1]

---

**1.** Apart from agriculture itself, included among the principal permitted uses in the "A" Agricultural District, in addition to detached single and two-family dwellings, are:

1. Places of worship
2. Circuses and similar enterprises for limited time periods
3. Certain types of hospitals
4. Sawmills
5. Schools, colleges, nursery schools and day care centers
6. Public-type and cultural buildings

In addition, these are among the spate of conditional uses provided for in Article 6:

1. Antique shops
2. Airports
3. Beauty parlors and barbershops
4. Extractive type industries
5. Food processing and packing plants
6. Funeral establishments
7. Mobile homes
8. Motels
9. Penal institutions

Thus, appellants' case comes down to the question whether the preamble establishes the intent argued by them. We are not fully persuaded that this intent is conveyed by its own language, but even if we make that assumption, the true question is how it may be reconciled with what we regard as a manifest contrary intention found in the body of Article 6.

Generally, when interpreting ordinances, we apply the same rules that govern the construction of statutes enacted by the legislature, see *Yorkdale v. Powell*, 237 Md. 121, 127, 205 A. 2d 269 (1964); *M. & C. C. of Balto. v. First M. E. Church*, 134 Md. 593, 603, 107 A. 351 (1919); *cf. Brooklyn Apts. v. M. & C. C. of Balto.*, 189 Md. 201, 205, 55 A. 2d 500 (1947). In this connection, we have held that although a preamble may be resorted to in aid of the construction of a statute if its meaning is doubtful, *National Can Corp. v. Tax Comm'n*, 220 Md. 418, 439, 153 A. 2d 287 (1959), *appeal dismissed*, 361 U. S. 534, 80 S. Ct. 586, 4 L. Ed. 2d 538 (1960); *Hammond v. Frankfeld*, 194 Md. 487, 491, 71 A. 2d 482 (1950), it forms no part of the statute, *National Can Corp. v. Tax Comm'n, supra; Gibson v. State*, 204 Md. 423, 432, 104 A. 2d 800 (1954). The intention and meaning of the legislature are to be collected from the law itself and are not to be restrained by anything in the preamble, *id.*

In light of our conclusion that the body of the ordinance itself clearly permits in the "A" Agricultural District a subdivision of single-family residential dwellings, otherwise in compliance with its various requirements, our course is clear. To the extent that the preamble collides with the plain and unambiguous language of the ordinance, the latter must prevail. Nor is this result altered by the mere titling of Article 6 as the "A" Agricultural District. The principle that the title of a legislative enactment may be considered in conjunction with the body of the statute to determine its intent, purpose and effect, *MTA v. Balto. Co. Revenue Auth.*,

10. Public utility buildings
11. Refuse disposal areas
12. Research laboratories
13. Nursing homes

267 Md. 687, 695-96, 298 A. 2d 413 (1973); *Unsatisfied Fund v. Bowman,* 249 Md. 705, 709, 241 A. 2d 714 (1968); *Central Credit v. Comptroller,* 243 Md. 175, 181, 220 A. 2d 568 (1966), is generally associated with statutes such as those enacted by the General Assembly, having explanatory titles that may be equated with preambles.

We conclude, therefore, that nothing in Article 6 or any other part of the zoning ordinance bars a subdivision of single-family dwellings from the agricultural district of Carroll County. That being so, the plan was in conformity with the ordinance; therefore, its approval by the commission was not an "illegal" rezoning, but merely the approval of a subdivision plan in accordance with Art. 66B, the zoning ordinance and the subdivision regulations.

In their briefs and in oral argument, appellants have bemoaned the chancellor's decision as one permitting the despoilment of the rural countryside. As we have already intimated, their complaint is with the language of the zoning ordinance rather than the action taken by the commission in the proper performance of its planning role. Thus, whatever may become of the Murphy property, the way is open to an appropriate amendment of Article 6 if the legislative body, *i.e.,* the county commissioners, should wish to adopt that course. In this connection, we note that Article 19 of the zoning ordinance provides for text amendments upon the petition of "[a]ny person. . . ."

This leaves for our remaining consideration only appellants' argument that they were denied a hearing prior to approval of the plan. Our decision that the action of the commission did not constitute "zoning" goes far to answer this contention. In any event, neither Art. 66B nor the subdivision regulations require that a public hearing be conducted by the commission before acting on subdivision plans. Nor does this argument rise to a constitutional level, *see Feldman v. Star Homes, Inc.,* 199 Md. 1, 6-7, 84 A. 2d 903 (1951); indeed, appellants make no such claim.

Our decision on the principal contention advanced by appellants makes it unnecessary for us to reach the question

whether the chancellor erred in sustaining the demurrer of Dr. Murphy.

*Decree affirmed; appellants to pay costs.*