DILLON *v.* STATE OF MARYLAND

[No. 101, September Term, 1975.]

*Decided May 4, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*George E. Burns, Jr., Assistant Public Defender,* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

O'DONNELL, J., delivered the opinion of the Court. LEVINE and ELDRIDGE, JJ., dissent and LEVINE, J., filed a dissenting opinion in which ELDRIDGE, J., concurs at page 588 *infra.* SMITH, J., concurs in part and dissents in part and filed an opinion concurring in part and dissenting in part at page 594 *infra.*

The question which we are here called upon to decide is: whether the appellant's motion for a mistrial should have been granted after the trial court, as part of its advisory instructions, read to the jury the "Declaration of Policy" set forth by the legislature as the preamble to Maryland Code (1957, 1971 Repl. Vol., [1975 Cum. Supp.]) Art. 27, § 36B.

The appellant, Samuel Henry Dillon, following a jury trial in the Circuit Court for Montgomery County (presided over by Shure, J.), was convicted under counts 1, 5, 7 and 12 of a multi-count indictment. Count 1 charged the armed robbery on January 22, 1974 of the manager of a Seven-Eleven Store in Takoma Park, Maryland; the 5th count charged the use of a handgun, in violation of Art. 27, § 36B, in the commission of that same felony. Counts 7 and 12 charged those same offenses, in connection with another armed robbery, upon the same victim, at the same store, on January 5, 1974.[1]

---

1. The statement by the Court of Special Appeals (Dillon v. State, 27 Md. App. 579, 580, 342 A. 2d 677, 678 (1975)), that the appellant was convicted on counts 1, 5, 7 and 9 appears incorrect. The docket entries show that a judgment of acquittal was granted by the court on count 9, at the close of

Pursuant to Maryland Rule 828 g, the parties have here agreed upon a statement, setting forth those facts which could reasonably have been found by the jury from the testimony, and which are relevant to the issue before us, as follows: "On the morning of January 5, 1974, the Appellant entered the Seven-Eleven Store, 900 Merrimac Drive, Takoma Park. He ordered Louis Sharp, the sole employee present, to 'Give me all your money.' Sharp handed over [the] money and lottery tickets. During the time of the robbery, Dillon exhibited a gun [which] 'looked like between a .45 or 9 millimeter.' * * * On January 22, 1974, the appellant robbed the same store, again displaying a 'pistol.' "

We additionally note that during the course of the trial, no issue was raised by the appellant that a handgun had not been used in either of the robberies.[2] Although he challenged his pre-trial identification, his defense was based upon an alibi for the times at which each of the robberies was committed.

In the course of its instructions, the trial court, after declaring: "what I say to you is advisory only, because you are the judges of the law and the fact in criminal cases," and after explaining to the jury the various counts which remained in the case, further stated:

> "There are also two counts involving the use of a handgun in the commission of a felony.
>
> "With respect to the use of a handgun, which you must also consider, Counts 5 and 12, the legislature several years ago enacted this new law.
>
> "They declared as part of the law, which I will read to you, Article 27, Section 36B, which reads, and I am quoting now, 'Declaration of Policy.' — 'The General Assembly of Maryland hereby finds and declares that:

---

the State's evidence, and that the jury returned guilty verdicts on counts 1, 5, 7 and 12.

2. In the instructions, the trial court told the jury that there was no dispute that there had been a robbery, and "no contradiction or dispute" that the person who committed it had a gun of some type in his possession.

[(i)] "There has, in recent years, been an alarming increase in the number of violent crimes perpetrated in Maryland, and a high percentage of those crimes involve the use of handguns;

[(ii)] "The result has been a substantial increase in the number of persons killed or injured which is traceable, in large part, to the carrying of handguns on the streets and public ways by persons inclined to use them in criminal activity;

[(iii)] "The laws currently in force have not been effective in curbing the more frequent use of handguns in perpetrating crime; and

[(iv)] "Further regulations on the wearing, carrying and transporting of handguns are necessary to preserve the peace and tranquility of the State and to protect the rights and liberties of its citizens.

"Section (d) of this section is the section under which he is charged, and is entitled 'Unlawful use of handgun in commission of crime.' "

Immediately thereafter, the trial court read to the jury the provisions of Art. 27, § 36B (d), the subsection under which the appellant was charged in counts 5 and 12.

In taking exception to the "handgun" instruction, the appellant's trial counsel contended that "it was improper to read into the record the portion of the statute containing the handgun use;" he further asserted: "I believe that is not the law, that the jury should not be instructed on that as being part of the law. I think it unduly prejudices the jury to read into the record an editorial comment by the legislature on the purpose of the law." The exception concluded with a motion for a mistrial, which the trial court denied.

The Court of Special Appeals affirmed the convictions in *Dillon v. State*, 27 Md. App. 579, 342 A. 2d 677 (1975) and found no "prejudicial effect resulting from incorporation of both sections (a) [the Declaration of Policy], and (d) of § 36B in the charge." We granted certiorari limited to the question hereinbefore posed.

In contending that such a jury instruction was prejudicial, the appellant, drawing upon language in *State v. Waletich*, 51 S. D. 209, 212, 213 N. W. 21, 22 (1927), asserts that it created the impression upon the jury that the section of the handgun law, with which he was charged, "stood upon a higher plane than other criminal laws," and thus "it would be particularly astute [for the jury] to convict." He relies as well upon the holdings in *State v. Locks*, 94 Ariz. 134, 382 P. 2d 241 (1963).

In *Waletich*, the defendant was convicted of transporting intoxicating liquor in violation of § 10303 of the South Dakota Code (1919). In the course of its instructions, the trial court told the jury that "all of the provisions of the intoxicating liquor laws of this state shall be liberally construed for the enforcement thereof, and that no shift, device, art, or contrivance whatever, which is used or practiced to evade the law, . . ." will avail or be of any benefit. *Id.* at 211, 213 N. W. at 22.

The Supreme Court of South Dakota, noted that "[t]his instruction was evidently taken from the provisions of sections 10235 and 10299, Rev. Code 1919." In finding that it was "inappropriate," insofar as it was given under § 10299, and that it was erroneous and prejudicial insofar as it was given under § 10235, that court stated:

> "The charge here was unlawful transportation — not any offense arising under section 10299. In so far as it was given under section 10235, it seems to us that the instruction was clearly erroneous. That section is one of *interpretation* of the act and is addressed solely to the courts, and the jury has nothing to do with it. The instruction should not have been given.
>
> "We are of the opinion that the portion of the instruction, which stated that the laws of this state especially direct that all of the provisions of the intoxicating liquor laws shall be liberally construed for the enforcement thereof, was not only erroneous, but constituted prejudicial error. We

> think it must have impressed the jury that the liquor laws stand upon a higher plane than other criminal laws, and that it should be particularly astute to convict upon a charge of violating the intoxicating liquor laws as compared with the violation of other laws." 51 S. D. at 212, 213 N. W. at 22. (emphasis added).

In *Locks*, the defendant, the operator of a "hobby shop" which sold "girlie" magazines, was convicted, in violation of an Arizona statute (A.R.S. § 13-822, subd. A), with contributing to the delinquency of a minor when he solicited him to look at "some of the magazines." In instructing the jury, the trial court read to them § 13-827, subd. A, which provided: "This article shall be liberally construed in favor of the state for the protection of the child from neglect or omission of parental duty . . . and also to protect children of the state from the effects of improper conduct, acts or bad example of any person which may be calculated to cause, encourage or contribute to, the dependency or delinquency of children . . ." After adverting to the principle that the proper interpretation of a statute is a question wholly for the court, and not to be submitted to the jury, the Supreme Court of Arizona, in reversing the conviction, stated:

> "In the instant case in reading A.R.S. § 13-827, subd. A to the jury the trial court impliedly invited the jury to construe §§ 13-821 and 13-822 *by giving to those sections a liberal meaning in favor of the state* to protect the children of the state from any person whom the jury might believe had improperly connected himself in a fashion to encourage the delinquency of a child. No more roving unrestrained authority to convict the defendant of the crime charged could possibly have been authorized, an authority unrestrained by any of the other accepted modes for the determination of the meaning of the language used in a statute.
>
> "While we have construed the language of §§

13-821 and 13-822 as being broad enough to sustain a conviction for the crime charged we, of course, can not say with certainty that under the instructions this was the basis for the jury's verdict. What liberal concepts the jury attached to the language of the legislature to protect children is impossible to tell. Of what it in fact convicted the defendant is unknown." 94 Ariz. at 138, 382 P. 2d at 244. (emphasis added).

As we see it, the holdings in both *State v. Waletich, supra,* and in *State v. Locks, supra,* are here distinguishable. There was no suggestion from so much of the trial court's instructions as set forth the legislative "Declaration of Policy" when Art. 27, § 36B was enacted, that it was to be "liberally construed" in favor of the state in its enforcement, nor that the "handgun" statute stood "upon a higher plane than other criminal laws." The "Declaration of Policy" related to the jury was a verbatim reading of what the General Assembly itself set forth and codified as Art. 27, § 36B (a)(i) through (iv). It did not "impliedly invite the jury to construe" § 36B in favor of the state, but merely set forth in (i) and (ii) facts, well within the knowledge of the citizenry as background data for the need to enact such a statute and recognized in (iii) and (iv) that current laws had been ineffective, and that a new statute was "necessary to preserve the peace and tranquility of the State and to protect the rights and liberties of its citizens."

In *Commonwealth v. Sansone,* 252 Mass. 71, 147 N. E. 574 (1925), the defendant, convicted of "so driving an automobile that the lives and safety of the public might be endangered," took exception to that portion of the trial court's instructions to the jury, when it read from an earlier appellate opinion, which had upheld the statute under which the defendant was charged. The trial court, in pertinent part, had instructed the jury as follows:

" 'The statute as thus construed does not amount to a prohibition of the use of motor vehicles. It is simply a regulation of their use. The safety of the

public from injury and loss of life through the operation of motor vehicles well may have been thought by the Legislature to be of such supervening importance as to warrant the enactment of such a statute. It is a matter of common knowledge that many lives are lost and many persons injured through the operation of motor vehicles on public ways. Any rational statute designed to diminish this appalling impairment of human usefulness and happiness is within the power of the General Court under the grant in the Constitution to enact all manner of reasonable and wholesome laws. . . .' " 252 Mass. at 72-73.

In holding that the instruction did not constitute error, the Supreme Judicial Court of Massachusetts stated:

"The exception of the defendant to a part of the charge in which the judge quoted from the opinion in a decided case must be overruled. *Commonwealth v. Dow*, 217 Mass. 473, 483.[3] This exception was taken to a portion of the charge which covered nearly a page of the printed record, and which in its main features stated the principles of law applicable to the facts of the case. . . . *It is not error for the trial court in the course of a charge to state the legislative purpose in enacting the statute upon which the indictment is based.*" 252 Mass. at 75, 147 N. E. at 575.

This view was restated by that court in *Commonwealth v. Brunelle,* 361 Mass. 6, 277 N.E.2d 826 (1972), in a case where the defendant was convicted of having "use[d] an instrument upon the body of a woman . . . with intent to procure an abortion," in violation of General Laws c. 272, § 19. In the course of his charge to the jury, "the trial judge

---

**3.** In Commonwealth v. Dow, 217 Mass. 473, 483, 105 N. E. 995, 1000 (1914), the court recognized that "[t]he practice of stating the governing principles of law to a jury in the exact language of a decided case long has prevailed in this Commonwealth."

stated that the 'intent and purpose' of G. L. c. 272, § 19, 'is to prevent attempts to destroy unprotected human beings in the womb of the mother,' " In affirming the conviction, the court stated:

> "A judge may inform a jury about the legislative purpose of a statute, if he does so accurately. See *Commonwealth v. Sansone*, 252 Mass. 71, 75. The purpose behind this statute, on its original enactment, is not certain and some reasons for continuing it have become increasingly controversial. The trial judge would have been wiser to have avoided entirely the risk of prejudice from a wholly unnecessary remark. 'The test of the charge,' however, 'is the impression created by it as a whole.' See *Commonwealth v. Kelley*, 359 Mass. 77, 92. See also *Commonwealth v. Pinnick*, 354 Mass. 13, 15. So viewed, and in the context of otherwise proper instructions on relevant legal issues, the remark was harmless in the circumstances of this case." 361 Mass. at 12, 277 N.E.2d at 831.

The same view was adopted in *People v. Deibert*, 117 Cal. App. 2d 410, 256 P. 2d 355 (1953), where the defendants were convicted of contributing to the delinquency of minors by selling them intoxicating liquor. In the course òf its instructions, the trial court told the jury that "the basic purpose of the Juvenile Court Law is to safeguard children and all other persons under the age of twenty-one years from those influences which tend to cause or encourage them to become delinquent." *Id.* at 422, 256 P. 2d at 362. In holding that such an instruction, spelling out the "purpose" of a statute was not error, the court stated:

> "While a judge is not bound to instruct on the history, object, or purpose of a law, it is proper to add to the knowledge of the jury on the subject at hand, as an aid to their deliberations, a correct statement of the purpose of such law in explanation of the instructions which follow. See *People v. Calkins*, 48 Cal.App.2d 33, 36, [119 P.2d 142]; 24

Cal.Jur. pp. 846-847." 117 Cal. App. at 422, 256 P. 2d at 363.

We think that the "Massachusetts view," as adopted by the Court of Special Appeals — as well as the view expressed by the California courts — are here particularly applicable in view of the provisions in Article XV, Section 5 of the Maryland Constitution, providing that "[i]n the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact . . . ."

Under "our almost unique Constitutional provision any instructions on the law which the [trial] court may give" are purely advisory and the jury must be so informed. *Schanker v. State*, 208 Md. 15, 21, 116 A. 2d 363, 366 (1955). As observed in *Jackson v. State*, 180 Md. 658, 667, 26 A. 2d 815, 819 (1942), "[t]he judge may tell [the jury] what he thinks the law is, but he must tell them it is merely advisory and they are not bound to follow it, [but] any erroneous advice or opinion given or expressed by him will be ground of reversal." These principles, so well implanted, supplied the bases for Rule 756 b, which provides that "[t]he court shall in every case in which instructions are given to the jury, instruct the jury that they are the judges of the law and that the court's instructions are advisory only."

Our predecessors in *Slansky v. State*, 192 Md. 94, 63 A. 2d 599 (1949), pointed out that a trial judge, in instructing in a criminal case, "should be careful to couch the instruction in an advisory form, so that the jury are left free to find their verdict in accordance with their own judgment of the law as well as the facts. When such an instruction is given, it goes to the jury simply *as a means of enlightenment,* and not, as in civil cases, as a binding rule for their government. *Broll v. State*, 45 Md. 356 [(1876)]; *Swann v. State*, 64 Md. 423, 1 A. 872 [(1885)]; *Dick v. State*, 107 Md. 11, 68 A. 286, 576 [(1907)]." 192 Md. at 107, 63 A. 2d at 604. (emphasis added).

Since, in a criminal case, "the jury [is] not bound to abide by the interpretation of the court of the meaning of a law, but [is] free to *construe* and apply it according to their own

judgments," *Franklin v. State*, 12 Md. 236, 246 (1858) (emphasis added), any instruction "as to the law of the *crime*" is advisory only. *Wheeler v. State*, 42 Md. 563, 570 (1875) (emphasis in original). Consistent with this right of the jury to exercise their independent judgment as to the law, in a criminal case, they are entitled to be informed by counsel of the legal theories of the prosecution or defense, even though such theories may be at variance with the trial court's advisory instructions. *Wilson v. State*, 239 Md. 245, 255, 210 A. 2d 824, 829 (1965), quoting with approval from *Vogel v. State*, 163 Md. 267, 276, 162 A. 705, 708 (1932). *See also Wilkerson v. State*, 171 Md. 287, 290, 188 A. 813, 814 (1937); *Sizemore v. State*, 5 Md. App. 507, 519, 248 A. 2d 417, 424 (1968); and Rule 756 e, recognizing the right of counsel to argue contrary to the court's advisory instructions when such instructions have been given prior to argument.

In counsel's argument to the jury, "as Judges of Law," it has been held permissible to refer to, and to read to the jury from a legal textbook, *Jackson v. State, supra*, at 667, 26 A. 2d at 819; *Hardison v. State*, 226 Md. 53, 61, 172 A. 2d 407, 411 (1961); to read from opinions of the Court of Appeals, even if the opinion be in the same case in a former appeal, insofar as the opinions relate to questions of law, *Brown v. State*, 222 Md. 290, 302, 159 A. 2d 844, 850 (1960); and to refer to *nisi prius* decisions, directly relevant to the interpretation of a statute where there was no appellate opinion on such issue of law. *Phillips v. State*, 6 Md. App. 56, 58-59, 250 A. 2d 111, 113 (1969).

As the Court of Special Appeals pointed out in *Hamilton v. State*, 12 Md. App. 91, 98, 277 A. 2d 460, 464 (1971), *aff'd*, 265 Md. 256, 288 A. 2d 885, *cert. denied*, 409 U. S. 1006 (1972), citing *Schanker v. State, supra*, Article XV, Section 5 of the Constitution, "contemplates that it is within the proper province of the jury *to resolve conflicting interpretations of the law and to decide whether the law should be applied in dubious factual situations*," but "[i]t does not confer upon them, however, untrammeled discretion to enact new law or to repeal or ignore clearly existing law as whim, fancy, compassion or malevolence should

dictate, even within the limited confines of a single criminal case." (emphasis added).

It is without question that a trial court may read to the jury the applicable provisions of those statutes which pertain to the crime or crimes charged, and advise the jury that the legal effect of the evidence admitted at the trial is to undertake to bring the accused within the operation of such penal statutes. *See Adams v. State,* 200 Md. 133, 142, 88 A. 2d 556, 560 (1952); *Slansky v. State, supra; Vogel v. State, supra. See also Parker v. State,* 7 Md. App. 167, 184, 254 A. 2d 381, 391 (1969), *cert. denied,* 402 U. S. 984 (1971). *See as well State v. Saul,* 258 Md. 100, 104, 265 A. 2d 178, 180 (1970), *affirming Saul v. State,* 6 Md. App. 540, 252 A. 2d 282 (1969) (where the trial court sent a photostatic copy of a statute to the jury in the course of their deliberations). Counsel may similarly read to the jury those statutory provisions which they believe relevant to their side of the case; and obviously, in their advocacy, are entitled to argue to the jury as to the applicability *vel non,* of such statutes to a defendant's conduct.

All the trial court's instructions were prefaced with the admonition that they were "advisory only." In relating the legislature's "Declaration of Policy" to the jury, the trial judge read verbatim subsection (a) (i), (ii), (iii) and (iv) as literally set forth in Art. 27, § 36B; this was followed by a reading of the provisions of § 36B (d). As we see it, either of trial counsel, as they may have considered such provisions to be relevant and helpful to their cause, would have been entitled to read that same language, as part of the statute, to the jury as judges of the law. Since the same "Declaration of Policy" was set forth in *Bremer v. State,* 18 Md. App. 291, 343-44, 307 A. 2d 503, 534, *cert. denied,* 269 Md. 755 (1973), *cert. denied,* 415 U. S. 930 (1974), in connection with the construction of Art. 27, § 36B, and the legislative intent in enacting it, counsel, under the holdings in *Brown v. State, supra,* in argument before the jury, would have equally been permitted to read from the opinion in *Bremer* those same provisions, limited as they were, to a

question of law. What the trial court read to the jury could have been read by counsel with impunity.

Although, as the appellant contends, a preamble basically forms no part of a statute, the recitals set forth by the legislature in a preamble may be resorted to as an aid in construction of a statute. *Clarke v. County Commr's*, 270 Md. 343, 349, 311 A. 2d 417, 421 (1973); *National Can Corp. v. Tax Comm'n*, 220 Md. 418, 439, 153 A. 2d 287, 300 (1959), *appeal dismissed* 361 U. S. 534 (1960); *Gibson v. State*, 204 Md. 423, 432, 104 A. 2d 800, 804 (1954). *See also Hammond v. Frankfeld*, 194 Md. 487, 491, 71 A. 2d 482, 483 (1950). Since, under Article XV, Section 5 of our Constitution, a jury "as Judges of the Law," is free "to construe [a statute] and apply it according to their own judgments," *Franklin v. State, supra*, and since the jury also has the right "to decide whether the law should be applied in dubious factual situations," *Hamilton v. State, supra*, we think that a reading to the jury of the "Declaration of Policy," which the legislature set forth as its preamble, in enacting the "handgun" statute, constituted, as an advisory instruction, "a means of enlightenment," *Slansky v. State, supra*, in assisting the jury in understanding and construing the provisions of Art. 27, § 36B, and in determining whether the accused came within the operation of that penal statute.

This concept is here applicable with even greater force when the apparent dichotomous nature of the two sets of charges submitted to the jury for its verdict is considered. The appellant was charged in counts 1 and 7 with the felony of robbery "with a dangerous and deadly weapon, to wit, a pistol," in violation of Code (1957, 1971 Repl. Vol.) Art. 27, § 488; counts 5 and 12 charged that he "unlawfully did use a handgun, to wit, a pistol, in the commission of a felony" (robbery), in violation of the newly enacted Art. 27, § 36B.[4] To the average layman serving as a juror, counts 1 and 5, as well as counts 7 and 12, when read together as pairs, would appear to charge the appellant, though on different dates,

---

4. The statute, enacted by Ch. 13 of the Laws of 1972, effective July 1, 1972, had been in effect a little more than 18 months at the time of the offenses charged.

with the very same offense. Counts 1 and 5, and the parallel counts, 7 and 12, contained elements common to each, *i.e.*, the use of a pistol in the commission of the felony of robbery, and it is not at all difficult to envision that a jury, unless specifically instructed, might consider the paired offenses to be identical, though charged in separate counts. *See Wright v. State*, 24 Md. App. 309, 314-15, 330 A. 2d 482, 485-86, ·cert. *denied*, 274 Md. 733 (1975) (where the jury returned a verdict of guilty of murder in the first degree, but did not render a decision on, nor consider, the count which charged a violation of Art. 27, § 36B). *See also Bremer v. State, supra,* where the appellant unsuccessfully contended that the counts charging violations of Art. 27, § 36B, caused him to be twice placed in jeopardy for the same criminal acts, and alternatively contended that the violations of the "handgun" statute merged in the counts charging him with the separate felonies of assault with intent to murder.

The "dominant purpose" as disclosed from the language in all of Art. 27, § 36B "is to stop the alarming rise in the use of handguns in the commission of crimes of violence," *Wright v. State, supra,* at 317, 330 A. 2d at 487. Subsection (d) makes it clear that the use of a handgun in the commission of any felony or any "crime of violence," [5] constitutes a separate misdemeanor, independent of the felony or "crime of violence," in connection with which a handgun may have been used, and mandates a separate minimum sentence. *State ex rel. Sonner v. Shearin,* 272 Md. 502, 325 A. 2d 573 (1974); *Wright v. State, supra.* The provisions in the statute preclude the application of the doctrine of merger of such misdemeanor in the felony or "crime of violence." *See Bremer v. State, supra.*

Since it is incumbent upon a trial court, in a criminal case, when requested pursuant to Rule 756 b, to give an advisory instruction on every essential question or point of law supported by the evidence, *Hardison v. State, supra; Bruce v. State,* 218 Md. 87, 97, 145 A. 2d 428, 433 (1958); *see also*

---

5. Maryland Code (1957, 1971 Repl. Vol. [1975 Cum. Supp.]) Art. 27, § 36B (d) incorporates, by reference, the definition of a "crime of violence" set forth in Art. 27, § 441 (e), and the offenses therein spelled out.

*Lang v. State,* 6 Md. App. 128, 130, 250 A. 2d 276, 277, *cert. denied,* 254 Md. 719, *cert. denied,* 396 U. S. 971 (1969), as we see it, when the trial judge included in his advisory instructions the legislature's "Declaration of Policy," as set forth in § 36B (a), he no doubt recognized in the minds of the jurors the patent dichotomy concerning the apparent identity of the separate pairs of charges, and was thus undertaking to apprise them of the motivating factors considered by the legislature in enacting the statute, the dominant purpose of the legislation, and that it was the intent of the legislature to make the use of a handgun in the commission of the felony of robbery (counts 5 and 12) a separate offense, independent of the robbery itself in which a handgun might have been used (counts 1 and 7).

Even though, as the Massachusetts court opined in *Commonwealth v. Brunelle, supra,* the trial judge may "have been wiser to have avoided entirely the risk of prejudice" in reading verbatim the preamble of the statute, and may have, with greater deftness, undertaken to remove from the minds of the jury any apparent confusion concerning the identity of the charges set forth in the separate counts, we do not find that a recitation of the legislature's "Declaration of Policy" constituted error. Although we do not encourage such a practice, the recitation of the "Declaration of Policy" did no more than relate the purposes behind the enactment of the statute upon which counts 7 and 12 were based, *Commonwealth v. Sansone, supra,* the preamble was accurately stated, *Commonwealth v. Brunelle, supra,* and was an aid and means of enlightenment to the deliberations of the jury as judges of the law, in construing the provisions of Art. 27, § 36B (d), in applying the legislative intent that the offenses charged in counts 7 and 12 were separate and distinct, and in deciding whether the statute should be applied to the evidence elicited before them.

Assuming *arguendo* that the recitation of the provisions of § 36B (a) may have been irrelevant, we see no prejudice to the appellant therefrom. In *Williams v. United States,* 203 F. 2d 85, 88 (9th Cir.), *cert. denied,* 345 U. S. 1003 (1953), a prosecution for violating the Selective Service Act of 1948, it

was held that "[t]he reading by the [trial] court of the entire criminal section of the Selective Service Act to the jury . . . was not error." In *People v. Becker* Colo., 531 P. 2d 386 (1975), in a prosecution for burglary, the trial court instructed the jury on the crime of theft by reading to them the entire theft statute. In rejecting the defendant's contention that this constituted prejudicial error because it permitted the jury to consider possibilities not supported by the evidence, that court stated: "[W]e cannot see any reason for including irrelevant portions of the [theft] statute in the instruction, [but] neither can we perceive any prejudice to the defendant by their inclusion." Colo., 531 P. 2d at 388. *See also United States v. Decker*, 304 F. 2d 702, 705 (6th Cir. 1962) (where the trial court read to the jury a statute different from that with which the defendants were charged); *People v. Draper*, 35 N. Y. (28 Hun.) 1 (1882) (where the jury had been able to obtain a copy of the complete criminal code).

Nor do we see any prejudice from the reference in the "Declaration of Policy" to the fact that (i) there had been an alarming increase in the number of violent crimes involving the use of handguns, (ii) there had been a substantial increase in the number of those killed or injured traceable to handguns in criminal activity, and (iii) the laws currently in force had been ineffective in curbing the use of handguns. Such recitation, although not founded upon any evidence presented at the trial, was a verbatim statement of the policy considerations adopted by the legislature in enacting the statute. The jury was in no way thereby misled, nor were they being acquainted with any data other than that which was within their common knowledge from their daily exposure to the communications media. *See Wilhelm v. State*, 272 Md. 404, 326 A. 2d 707 (1974), where, in connection with finding that a prosecutor's reference, in closing argument, to the number of murders which had been committed "was but a direction by him to the jury of a fact that was within their common knowledge," we pointed out:

> "Jurors may be reminded of what everyone else knows, and they may act upon and take notice of

those facts which are of such general notoriety as to be matters of common knowledge. *State v. Adams,* 1 Ariz. App. 153, 400 P. 2d 360, 362 (1965), citing *United Verde Extension Mining Co. v. Littlejohn,* 279 F. 223 (9th Cir. 1922); and 53 Am. Jur. *Trial* § 481 (1956)." 272 Md. at 439, 326 A. 2d at 728-29.

Conceding that the trial court may have been in error — although we have found to the contrary — any such error must be considered "harmless." In *Dorsey v. State,* 276 Md. 638, 659, 350 A. 2d 665, 678 (1976), we recently pointed out that error is "harmless" where a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict to the prejudice of the appellant. As we earlier pointed out, it was undisputed in the trial court that robberies had taken place on the dates charged; there was no contradiction or dispute in the evidence that the perpetrator of the robberies had been armed with a handgun. The sole issue for the jury was the identity of the robber. In our view, so much of the trial court's instructions, as set forth the "Declaration of Policy" proclaimed by the legislature in enacting the statute, played no role whatsoever, to the prejudice of the appellant, in the rendition of the jury's verdicts.

We find no intimation whatsoever in our independent review of the record that there was any suggestion in any of the trial court's instructions that "it would be particularly astute [for the jury] to convict." We think that the appellant's contention in this regard is fanciful.

In connection with the denial of the appellant's motion for a mistrial predicated upon the court's instruction, we stated in *Wilhelm v. State, supra:*

"A request for a mistrial in a criminal case is addressed to the sound discretion of the trial court and the exercise of its discretion, in a case involving a question of prejudice which might infringe upon the right of the defendant to a fair trial, is reviewable on appeal to determine whether or not

there has been an abuse of that discretion by the trial court in denying the mistrial. *Basiliko v. State,* 212 Md. 248, 260-61, 129 A. 2d 375, 381 (1957). The decision by the trial court in the exercise of its discretion denying a mistrial will not be reversed on appeal unless it is clear that there has been prejudice to the defendant. See *Lusby v. State,* [217 Md. 191, 141 A. 2d 893 (1958)]." 272 Md. at 429, 326 A. 2d at 723.

Since we have concluded that there was no error when the trial court read the legislature's "Declaration of Policy" to the jury, and thereby no prejudice to the appellant, we hold that there was no abuse of the trial court's discretion in denying the motion for mistrial.

> *Judgments of the Court of Special Appeals affirmed; costs to be paid by appellant.*

*Levine, J., dissenting:*

Because in my view it was erroneous and prejudicial to have included in the jury charge the "Declaration of policy" contained in Maryland Code (1957, 1976 Repl. Vol.) Art. 27, § 36B (a), I respectfully dissent from the plurality opinion.

While there may be nothing inherently wrong with the inclusion of a statement of legislative purpose in jury instructions, neither does such matter, even when stated in a preamble or "Declaration of policy," bear the special stamp of validity which the majority seems to accord it here in adopting what it calls the "Massachusetts view." Rather, an instruction concerning legislative purpose should be treated like any other, the question being in each case whether, under the circumstances, the instruction is calculated to advise the jury as to the law and enable them to apply it to such facts as they find to exist in a given case. When unnecessary, irrelevant or otherwise erroneous matter is included in an instruction, the question becomes whether, considering the charge as a whole, the erroneous matter was

prejudicial to the defendant. *See Bell v. United States*, 185 F. 2d 302, 311 (4th Cir.), *cert. denied*, 340 U. S. 930 (1951); *Presley v. State*, 257 Md. 591, 595, 263 A. 2d 822 (1970).

The "legislative facts" contained in the "Declaration of policy" read to the jury here were totally irrelevant to the issues raised at trial and, as the majority concedes, formed no part of the substantive crime with which the defendant was charged. Code (1957, 1976 Repl. Vol.) Art. 27, § 36B (d), for the violation of which the defendant was convicted, provides:

> "Any person who shall use a handgun in the commission of any felony or any crime of violence as defined in § 441 of this article, shall be guilty of a separate misdemeanor . . . ."

The indictment charged armed robbery and use of a handgun in the commission of a felony. The first issue for the jury to consider, therefore, was whether the defendant had committed the crime of armed robbery. A decision against the defendant on that issue raised the single additional issue, and the only question which should have been put to the jury in the charge, whether in committing the armed robbery the defendant had used a handgun.

Though the act proscribed by Art. 27, § 36B (d) is both totally uncomplicated and clearly set forth in the statute, the trial judge nonetheless felt it necessary to include in his charge the "Declaration of policy" contained in § 36B (a) and set out in the opinion of the majority. In that "Declaration of policy," read in its entirety to the jury, the Legislature "found and declared" that "[t]here has, in recent years, been an alarming increase in the number of violent crimes perpetrated in Maryland," resulting in "a substantial increase in the number of persons killed or injured," and further, that "[t]he laws currently in force have not been effective . . . [in] preserv[ing] the peace and tranquility of the State. . . ." In my view, this "crime-in-the-streets" oration was not only irrelevant and unnecessary, but also had a pronounced tendency to inflame the jury by arousing its anger and fear and otherwise to divert the minds of its

members from the issue of this defendant's guilt. *See Wood v. State*, 192 Md. 643, 652, 65 A. 2d 316 (1949). The erroneous inclusion of such matter, attended by so clear a possibility of prejudice, should not be allowed to stand uncorrected. I would therefore reverse and remand for a new trial.

A possible explanation for including the "Declaration of policy" in the charge, as pointed out by the majority, is that the trial judge may have felt it necessary to clarify an apparent dichotomy in the crimes charged. Even assuming, however, that the majority is correct in observing that a jury might, under the circumstances, perceive some ambiguity in the separate charges of armed robbery and use of a handgun in the commission of an armed robbery, and conceding the necessity for clarification, the instruction actually given was nonetheless unjustified. The desired clarification could have been accomplished quickly and simply by stating that these crimes were considered sufficiently dangerous to be deemed separate offenses and that conviction for both, if warranted by the facts, was possible. *See People v. Nicoll*, 3 App. Div. 2d 64, 158 N.Y.S.2d 279, 295 (1956).

The assertion by the majority, citing *Wilhelm v. State*, 272 Md. 404, 326 A. 2d 707 (1974), that there could be no prejudice here because the "facts" recited were "common knowledge" is simply not a sufficient answer. These "facts" were not facts at issue in the case and were, therefore, patently irrelevant. Moreover, if these "facts" were within the common knowledge of the jury, the only purpose served by reciting them would be to emphasize them by repetition, thereby attributing to them even greater weight than they would otherwise have had, magnifying the prejudice and further misleading the jury. *See Ager v. Baltimore Transit Co.*, 213 Md. 414, 423, 132 A. 2d 469 (1957). Created was a real possibility for the jury to conclude that it would "be particularly astute to convict" the defendant of the crimes charged. *State v. Waletich*, 51 S. D. 209, 213 N. W. 21, 22 (1927). Such apparent "roving unrestrained authority to convict the defendant" was condemned by the Arizona

Supreme Court in *State v. Locks*, 94 Ariz. 134, 382 P. 2d 241, 244 (1963).

It is likewise insufficient to assert that the "Declaration of policy" could have been read to the jury by the state's attorney. First, the premise that a prosecuting attorney could read such a statement to the jury is doubtful at best. It is improper for a prosecuting attorney to include in his remarks facts which are plainly inadmissible at trial. *Clarke v. State*, 238 Md. 11, 20, 207 A. 2d 456 (1965). This is particularly true where, as here, those remarks are "likely or apt to instigate prejudice against the accused." *Contee v. State*, 223 Md. 575, 584, 165 A. 2d 889 (1960). The "legislative facts" contained in the "Declaration of policy" were plainly irrelevant to the issue whether the defendant in this case committed the acts charged in the indictment. *See Dorsey v. State*, 276 Md. 638, 643-46, 350 A. 2d 665 (1976).

Here, however, the prejudice arising out of the presentation of these extraneous "facts" contained in the "Declaration of policy" is exacerbated by the fact that they were recited not by the prosecuting attorney, but rather by the trial judge. Thus, the remarks were accompanied by the imprimatur of the court, adding to the weight given these facts by the jury. *Hardison v. State*, 226 Md. 53, 62, 172 A. 2d 407 (1961); *see Commonwealth v. Moyers*, 280 S.W.2d 513, 515 (Ky. 1955).

Nor is the charge here saved by the fact that the § 36B "Declaration of policy" has been treated in a judicial opinion. While it may be proper in some cases for the court to read to the jury from appellate decisions, such a practice is not favored. In fact, this Court has on more than one occasion held that it was inappropriate to include in jury instructions quotations from appellate decisions. *See, e.g., State v. Grady*, 276 Md. 178, 186, 345 A. 2d 436 (1975), and cases cited therein.

The final point made by the majority concerns Maryland's unique constitutional provision, Article XV, § 5, which makes the jury in a criminal case the "Judges of Law" as well as of the facts. This provision, says the majority,

justifies such comments as were made here concerning the "alarming increase in the number of violent crimes" as "aids" for the jury in interpreting the relevant statutory provision. Impliedly, then, the majority holds that the prosecutor could introduce any such "legislative facts," however irrelevant to the guilt of a defendant in a given case, so long as those "facts" might be relevant in showing the legislative purpose in enacting the statute. Such a principle is fraught with dangers to the rights of the accused.

But whatever the merits of the principle espoused by the majority in a proper case, and leaving aside questions of the validity of Article XV, § 5 under the Federal Constitution, at least as so applied, it has no application here. No problem of statutory construction or application is mentioned by the majority, which can only lead one to conclude, especially in light of the simplicity and clarity of the statute, that no such problem exists. Indeed, the Court of Special Appeals has observed that the legislative intent with respect to § 36B (d) is "pellucid." *Bremer v. State*, 18 Md. App. 291, 344, 307 A. 2d 503, *Md. cert. denied*, 269 Md. 755 (1973), *U. S. cert. denied*, 415 U. S. 930 (1974). It is axiomatic that where a statute is clear and unambiguous, no other indicia of intent or meaning need be consulted. *Comptroller v. A. Cyanamid Co.*, 240 Md. 491, 506-07, 214 A. 2d 596 (1965); *Md. Medical Service v. Carver*, 238 Md. 466, 478, 209 A. 2d 582 (1965); *Board of Sup. v. Weiss*, 217 Md. 133, 136, 141 A. 2d 734 (1958).

There being no problem of construction or application of the statute in this case, no other use of the "Declaration of policy" by the jury was proper. Article XV, § 5 does not confer upon the jury the right to enact new law or ignore existing law. *See Hamilton and Fletcher v. State*, 12 Md. App. 91, 98, 277 A. 2d 460 (1971), *aff'd*, 265 Md. 256, 257, 288 A. 2d 885, *cert. denied*, 409 U. S. 1006 (1972). At most, Article XV, § 5 was intended to provide that in a criminal case the jury was "not bound to abide by the interpretation of the court of the meaning of a law," but was "free to construe and apply it according to their own judgments."

*Franklin v. State,* 12 Md. 236, 246 (1858); *accord, Wilson v. State,* 239 Md. 245, 254, 210 A. 2d 824 (1965).

Nothing in the foregoing, I suggest, is in conflict with the cases cited by the majority as establishing or following the "Massachusetts view." In fact, I doubt the existence of a "Massachusetts view," such as described by the majority and the Court of Special Appeals, which holds that in all cases it is proper for the court to include in its instructions a statement of the legislative purpose in enacting the statute. In *Commonwealth v. Sansone,* 252 Mass. 71, 147 N. E. 574, 575 (1925), apparently the origin of the "Massachusetts view," the court simply stated, without discussion, that it was not error for the trial court to state the legislative purpose. There, it appears that the trial court was attempting to give meaning to a statute which proscribed "so driving an automobile that the lives and safety of the public might be endangered," *id.* at 574, this apparently only to dispel any notion that all driving might be in violation of the statute.

The second Massachusetts case, *Commonwealth v. Brunelle,* 361 Mass. 6, 277 N.E.2d 826, 831 (1972), while citing *Sansone,* makes it clear the court was deciding that the instruction at issue, which included a statement of the legislative purpose, was harmless when considered in light of all the circumstances of the case and the charge viewed as a whole. It is significant that the Massachusetts court, like the majority here, noted that the statement of the legislative purpose was "wholly unnecessary" and that it would have been wiser if the court had omitted it from the charge. And finally, the charge in *People v. Deibert,* 117 Cal. App. 2d 410, 256 P. 2d 355, 362 n.1 (1953), the last case cited by the majority, was, in context, wholly innocuous. All the trial court said there was "that the basic purpose of the Juvenile Court Law is to safeguard children."

In sum, I question the existence of a "Massachusetts view" which permits the trial court in all cases to state to the jury the legislative purpose in enacting a statute. Rather, such an instruction must be tested by the same standard as any

other instruction. I would hold, therefore, that the instruction in this case was both erroneous and prejudicial.

Judge Eldridge authorizes me to say that he concurs in the views expressed herein.

*Smith, J., concurring and dissenting:*

I concur in the result and in so much of the opinion of Judge O'Donnell as considers the error here to be harmless beyond a reasonable doubt under *Dorsey v. State,* 276 Md. 638, 659, 350 A. 2d 665 (1976). As to the propriety of that which was done by the trial judge here, however, I concur fully with the views expressed by Judge Levine.